## HOSEA, Jr. v. McCRORY.

1. Where the proof shows the delivery of a letter or package containing money, to be carried between two places, at each of which is a post office, a recovery may be had on a count charging the defendant as a bailee to deliver the money on request, even if the contract to carry is conceded to be invalid, as opposed to the post office laws.

Hosea, Jr. v. McCrory.

2. Although ordinarily a steamboat may not be compelled to take charge of a cash letter, yet if the general usage of boats in a particular trade to take charge of such letters is shown, the delivery of such a letter to a particular boat, will be governed by this common usage.

3. The delivery of a cash letter to the clerk of a steamboat, is a delivery to the master for the purpose of charging him, and it is not necessary to show a special authority to the clerk to receive cash letters, when a general usage of boats in the trade is to receive them.

Writ of Error from the Circuit Court of Mobile.

ACTION on the case, by McCrory, against Hosea. Several of the counts are against the defendant as common carrier, and alledge the delivery to him by the plaintiff of a letter containing $183 15, to be safely carried from Mobile to Pickensville. In other counts, the money is charged to have been deposited with the defendant, to be re-delivered to the plaintiff on request, as well as to be kept with due and proper care.

At the trial, on the general issue, the deposition of a witness was read, stating he was the clerk to the house which remitted the money, in January, 1842, and as such made out the account sales for the plaintiff, of cotton sold for him. The balance due he did not remember with certainty, but to the best of his recollection it was $183. He handed a letter inclosing the balance of the account in bank bills, to the clerk of the steamboat Belle Poule.

There was also evidence tending to show the custom of steamboats in general, and of the practice of the Belle Poule, to carry cash letters from Mobile to their places of destination; that the defendant was master and owner of the Belle Poule when the letter in question was delivered to its clerk; that the letter was marked cash; and that other letters of a like kind had been received at other times by the defendant himself, in the absence of the clerk of the boat; also that no compensation for such letters was usual. The defendant then offered a witness, who testified that for many years he had been connected with steamboats plying on the Alabama rivers, and from his knowledge of the trade, the carrying of letters was a mere gratuity on the part of the carrier; that boats

have always been considered privileged to carry or refuse to carry such letters at pleasure; that in general no receipt is given, and when receipts have been required, the witness has always known them refused. So far as the witness knew the understanding of the trade on this subject, it was, that no liability was incurred by the master or owner, for the carriage of letters by the clerk. Another witness corroborated these statements, and proved there were post offices at Mobile and Pickensville at the time of the supposed .loss. No evidence in reply was offered, and on this state of proof the court charged the jury—

1. That a contract to carry a letter from Mobile to Pickensville, there to be delivered, would be illegal, and could not be enforced in this action; but if the evidence showed the letter was to be delivered at another place, the rule would not apply.

2. That although the letter was to be delivered at Pickensville, this would only preclude the plaintiff from recovering on those counts which thus set out the contract, but would not preclude a recovery on the other counts.

3. That although the defendant could not be considered as a common carrier, yet if the proof showed it was the custom and usage for clerks to carry letters, the clerk must be regarded as the agent of the master, and a delivery to the clerk was a delivery to the master for the purpose of this suit.

The defendant then asked the court to charge—

1. That the depositions of the plaintiff's witnesses contained no competent proof as to the amount claimed.

2. That the master is not liable in this action, without proof that the clerk was authorized to carry cash letters.

These charges were refused, and the defendant excepted, as he did also to those given.

P. PHILIPS and JEWETT, for the plaintiff in error, insisted—

1. That the charge first given could not be sustained, because, if a different place than Pickensville was where the letter was to be delivered, then the contract proved would be variant from that described.

2. There could be no recovery on the counts against the defendant as bailee, without showing gross negligence. The

liability of a mere gratuitous bailee is different from that of a common carrier, and the terms of his undertaking must be proved by the plaintiff. [2 Greenl. Ev. 172; 2 Steph. N. P. 995; 2 B. & P. 416.]

3. A carrier is not responsible for the acts of his servants, when such acts are not within the general scope of their business. [2 Starkie, 181; 2 Steph. N. P. 977; 2 C. & P. 613.]

4. The proof here does not show the delivery of the letter was to the clerk as clerk of the steamboat, or that he had any authority to receive cash letters. This was necessary, unless the master, as a common carrier, was bound to carry cash letters. [2 C. & P. 613.]

G. N. STEWART, contra.

GOLDTHWAITE, J.—1. As this case can be decided without the examination of the question, whether a contract to carry a cash letter between two places, at each of which there is a post office, is invalid, as trenching on the post office regulations, we shall not consider it. Assuming, as the court below seems to have assumed, that such a contract has no validity, this furnishes no excuse for a refusal or neglect to deliver the letter when demanded, or for its loss, when the proper care for its preservation is wanting. The different counts of the declaration vary the statement of the cause of action, so as to allow the plaintiff's recovery, if the money is traced to the defendant's custody, and not afterwards accounted for upon request. We think the depositions offered by the plaintiff were entirely sufficient to warrant the conclusion that a particular sum of money was delivered to the clerk of the steamboat whilst the defendant was master, and in our judgment, the only real subject for dispute, is whether the latter is liable in consequence of the general usage of steamboats in this trade, to carry such letters.

2. Ordinarily, a steamboat could not be required to take charge of a cash letter, because the business of freighting does not include the transmission of money in that mode. Nor does it include, as we presume, the carrying of live stock or slaves, yet no one can doubt as to the former, that such a general usage and custom may have obtained, as to make the

boat and its master responsible on the contract of an under officer in respect to such property. It is a general rule, of the utmost utility, that where parties have not entered into any express and specific contract, a presumption nevertheless arises, that they meant to contract and to deal according to the general usage, practice and understanding, if any such exist, in relation to the subject matter." [2 Starkie's Ev.᠎ .] The extent to which a general usage may impose an additional liability on the owners of a steamboat or vessel, is forcibly illustrated by the case of Emery v. Hersey, 4 Greenl. 407, where the owner of a vessel was held liable for the proceeds of goods shipped on his vessel, and consigned to the master for sale. [See also Morely v. Lord, 2 Conn. R. 389 ; Taylor v. Watts, 3 Watts, 65.] In Sewall v. Allen, 6 Wend. 335, the general responsibility of steamboat owners was considered as not extending to cover the loss of money entrusted to the captain, but there it is conceded the liability would exist, if this course of business was warranted by custom and usage. The previous decision of the supreme court in the same cause, (2 Wend. 335) was based on the fact, that the money was received by the master, and the custom proved, was for the master to carry packages of money on his own account—the compensation being a personal perquisite.

3. In the case at bar, the court put it to the jury expressly on the proof of a general usage, and charged that, if the evidence showed this general usage, the clerk must be considered as the agent of the master, and a delivery to him was a delivery to the master, for the purpose of the suit. This, we think, was a correct exposition of the law on this subject, and the charge which the defendant afterwards requested, that the master was not bound, without proof that the clerk was authorized to carry cash letters, evidently refers to a *special authority*, independent of the general usage. In this view, it was properly refused, as all which the plaintiff was required to show, was a delivery of the letter to some one placed by the master in a capacity to act for the boat. [Butler v. Basing, 2 C. & P. 613.] The whole case proceeds on the ground that the clerk of a boat is the person placed by the master and owners, to receive whatever the boat may

carry, according to the general custom of trade; and if there was any question intended to be raised as to the precise extent of his agency, it rested with the defendant to show its limitation, after it was made out that he was the clerk of the boat.

We think the cause was properly submitted to the jury on the general custom, though in this particular instance, it is very possible the particular usage of this boat was of itself sufficient to charge the master.

The views we have expressed seem in entire accordance with those declared by Judge Story in The Citizens' Bank v. Nantucket Steamboat Company, 2 Story, 16, which we had no opportunity to examine until the opinion was written. There a common usage was established, and the learned judge considered this as *prima facie* sufficient to charge the owners, though in that particular case it was rebutted by other proof, which induced the judge sitting as an admiralty court, to decree for the defendants. We are not called on to express an opinion, whether the verdict in this case was proper under the evidence, as that was for the judgment of the court below in awarding or refusing a new trial. There seems to be no error in the propositions on which the case went to the jury.

Judgment affirmed.