## JEWELL *vs.* CENTER & CO.

1. When application is made for a continuance to enable plaintiff to retake the deposition of a witness, (who had stated, through inadvertence on his part or that of the commissioner, that another material witness for plaintiff was interested as a partner with him,) the court may, in its discretion, continue the cause unless the defendant will consent that the other witness may testify ; and if the defendant elects to let him be examined, and the witness swears that he is not interested, in which statement he is sustained by the testimony of his confidential clerk, there is no error in his admission.

2. When a party reads in evidence to the jury a deposition taken by his adversary, which the latter declined to offer, he thereby makes it his testimony, and it does not lie with him to say that any portion of it is illegal or incompetent.

3. When the evidence of a custom is conflicting, it should be left to the jury to determine whether the custom is proved ; but where the only evidence is that of one witness, whose testimony, not restricting the custom to any particular time or place, tends to prove the law merchant to be otherwise than it really is, the court may instruct the jury that there is no evidence of custom before them.

4. The law merchant cannot be proved by witnesses, but is matter of law for the court.

5. Evidence of a custom held to be so vague as to the length of time it had existed, and so general and indefinite as to the place of its existence, as not, *prima facie*, to enter into and form a part of the contract sued on, so as to control its provisions as a particular usage of trade.

6. The non-production by a witness of a letter spoken of by him, which he is required by the interrogatory to attach to his answer, does not justify any inference prejudicial to the party by whom his deposition was taken ; its non-production after notice would only justify parol proof of its contents.

APPEAL from the City Court of Mobile.
Tried before the Hon. ALEX. McKINSTRY.

ASSUMPSIT on the common money counts, by Center & Co. against J. J. Jewell, to recover reclamations on ninety-three bales of cotton. The only plea was the general issue. On the trial, " the plaintiff moved for a continuance, for the purpose of enabling him to retake the deposition of P. G. Heirne, who had stated, in his first deposition then on file, that H. O. Brewer (who was a material witness for plaintiff) "was a partner with plaintiff in the transaction of the shipment of the ninety-three bales of cotton in question" ;—plaintiff's counsel alleging that said Brewer was not interested, that said Heirne knew that he was not interested, and that his statement to the contrary in his deposition originated in the carelessness of the commissioner, or an entire misapprehension on Heirne's part of the purport of the question and his answer thereto. The court thereupon determined, that the cause should be continued until the next term, to enable plaintiff to retake said deposition, unless the defendant would consent that said Brewer should be allowed to testify as a witness on the trial ; and defendant elected to go to trial, and to permit said Brewer to be examined as a witness."

The plaintiff then introduced said Brewer as a witness, who testified, that he had been engaged in Mobile for many years, making advances on cotton for account of Center & Co. as their agent, and procuring consignments to their house in New York ; " that the defendant, in February or March, 1851, shipped through him, as agent of plaintiff, who did business in New York, ninety-three bales of cotton ; that a bill was drawn by defendant, on plaintiff, against said cotton, for the supposed value of the cotton less five dollars per bale, which bill matured on the 24th of April, 1851, and was duly paid by plaintiff ; that said cotton reached New York about thirty days after its shipment, but was not sold until after the maturity and payment of the bill ; that, after said cotton was sold, the account of sales, and also defendant's account current with Center & Co. as to the same transaction, were sent to witness, which he presented afterwards to defendant, and had several conversations with him in reference to the transaction, in which defendant objected to the conduct of plaintiffs in selling his cotton at the time and for the price they did. He further testified, that it is the custom among merchants,

when a bill is drawn against the shipment of the cotton, for the consignee who makes the advance to sell the cotton at his discretion, in the absence of instructions from the consignor; that he was not bound, in the absence of instructions, to dispose of the cotton to meet the bill, though he might do so if he thought it best." On cross examination, he further testified, that he had no interest in the shipment of said cotton, other than as an agent for plaintiff; that he was not a partner with plaintiff in the transaction, and whether this suit resulted for or against plaintiff, he could not gain or lose thereby.

Plaintiff then introduced one Fowler as a witness, who testified, "that he was the confidential clerk and book-keeper of said Brewer, and had been for a number of years past, as well as at the time said cotton was shipped and said advances made, acting in that capacity to him; that said Brewer had no other interest in said transaction than as an agent for commissions; that his commission account connected with this transaction was now closed and settled; that he was not a partner with plaintiff, and never had been; that he was formerly a partner in the house of Edward C. Center & Co. of Mobile, but that house had been dissolved before this transaction took place." Plaintiff then introduced one Whittaker as a witness, who testified, "that he was a merchant in Mobile, and had been engaged for many years in procuring assignments of cotton, and making advances thereon, in the manner in which it was done in this case; that it was the custom of merchants, in such cases, in the absence of instructions, to hold the cotton at their own discretion, without reference to the maturity of the bill drawn against it; that they were not required by custom to sell to meet the bill."

The defendant then introduced the deposition of said P. G. Heirne, taken at the instance of plaintiff in New York city, but which plaintiff had declined to use. This witness, who stated that he had been plaintiff's book-keeper in New York city for fifteen years, proved the correctness of the account of sales of said cotton, and of the account current in relation to it, (showing that the net proceeds were less than the advances by about $981,) by reference to entries in the plaintiff's books, made by witness and other clerks. The

following questions, among others, were propounded to him
on cross examination: "Did you receive, or do you know
that plaintiff received, a letter or letters from defendant
about the time and soon after the receipt of said cotton? If
yea, attach them to your answer to this interrogatory. Do
you know of any letter or letters being received by plaintiff
from H. O. Brewer, on the subject of this cotton? If yea,
attach them to your answers to this interrogatory." The
witness answered as follows: "I believe a letter was received
from Jewell soon after the receipt of said cotton. I think it
was sent to Mobile to be exhibited in this case; but I have
no copy of it, and I don't recollect its substance. I have no
particular knowledge of any letter from Mr. Brewer to plain-
tiff, on the subject of this cotton; but I have no doubt let-
ters were written by him on the subject." In answer to an-
other cross interrogatory, he testified, that "H. O. Brewer
was a partner in this transaction of shipping said ninety-
three bales of cotton to the plaintiff."

Defendant also introduced one Hanna as a witness, who
testified, "that he was a factor in the city of Mobile, and had
been from 1838; that shipping cotton was not his regular busi-
ness, but he had frequently shipped cotton, both on his own
account and on account of planters, and it was drawn against
in each instance; that the uniform custom of merchants, in
such cases, in the absence of instructions, was for the holder
of the cotton to sell to meet the bill." Defendant also offered
evidence to show that cotton commanded a higher price in
New York at the time of the maturity of his bill, than at the
time when his cotton was subsequently sold by plaintiff.

"The court charged the jury, among other things, that the
testimony of Brewer was not sufficient to prove the account;
but, if they believed the witness Hierne, it was sufficiently
proved; that by introducing and reading the deposition of
Hierne to the jury, the defendant had made it his testimony;
further, that there was no evidence of custom before them;
that no custom could be proved, when the witnesses contra-
dicted each other as to its existence, or as to what it was; to
all of which defendant excepted," and then requested the fol-
lowing charges:

"1. That, if the jury believe from the evidence that said

Brewer was a partner of plaintiff, and was interested in the shipment of the ninety-three bales of cotton, then he is an incompetent witness, and they should disregard his testimony in this case.

"2. That what witness stated in his deposition that was not of his own knowledge, was not evidence to establish the account.

"3. That what was said by witness about the entries in plaintiff's books which were not made by him, and of which he had no other knowledge than such as he derived from an inspection of said books, was not evidence to prove the account.

4. That, if they should find from the evidence that Brewer wrote a letter to Center & Co. upon the subject of the shipment of the ninety-three bales of cotton, and that Center's counsel, Center himself being present, declined to attach such letter to the deposition of witness, examined by plaintiff,—they might infer fraud, or that instructions were given before the maturity of the bill to sell said cotton.

"5. That the refusal to show or attach said letter to the deposition of said witness, when requested so to do, was a circumstance for them to consider in connection with all the facts of the case.

"6. That if they should be satisfied from the evidence that it is the general and uniform custom among merchants, though not universally acquiesced in, in the absence of instructions, when cotton is shipped and a bill drawn against it, to sell the cotton to meet the bill; and if this should not be done, and after the maturity of the bill, and before the sale of the cotton, it should decline, the loss falls on the holder."

The court refused each one of these charges, and in response to the last charged the jury, "that when cotton is held for sale by a merchant, who has made an advance upon it, in the absence of instructions as to the time or terms of sale, he is at liberty to sell at such time, and on such terms, as in the exercise of a sound discretion he shall deem proper for the interest of his principal." The defendant excepted to each refusal, and to the charge given, and he now assigns them for error.

Wm. BOYLES, for the appellant :

The court should have excluded Brewer's evidence, and also that portion of Hierne's which was given from hearsay. 1 Phil. Ev. 184, 360, 447. Though the whole of an affidavit or answer must be read if any part is, yet you need not believe all equally.—*Ib.*; 2 Doug. 788 ; 2 Bos. & P. 542–8.— Suppose Jewell had examined Hierne as his own witness in the first place, and had called upon him to produce memoranda from the books of Center & Co.; these memoranda, when produced, would be evidence in the cause, but not necessarily conclusive evidence of the facts which they might tend to establish.—Tarleton v. Goldthwaite, 23 Ala. 346.

The court erred in the charges given. A charge which withdraws from the jury any facts, however weak, which tend to establish the point in issue, is erroneous.—22 Ala. 797 ; 16 Penn. State R. 22 ; 32 Maine 320 ; 15 N. H. 351 ; 5 Cranch 67 ; 13 Miss. 569. A charge which assumes a fact as proved, or which takes from the jury the right to determine the measure of credit to be allowed to testimony, is erroneous.—22 Ala. 470 ; 5 Strobh. 167 ; 4 Port. 320 ; 2 Munf. 230 ; 5 Ala. 392 ; 23 *ib.* 361 ; 5 Watts & S. 553.

The charges asked should have been given.—Desha, Smith & Co. v. Holland, 12 Ala. 513.

Evidence of custom was introduced by the defendant to show the understanding of the parties to the contract, for which purpose it is always admissible ; because persons are presumed to contract in reference to it, and it becomes a part of the contract. It concerned only the usage of trade in a particular place ; and to establish such a usage it is not necessary that it should have existed from time immemorial, nor for any definite or indefinite period of time : it is sufficient if the usage be established, certain, known, uniform, reasonable, and not contrary to law. If the custom has existed long enough to become a part of the law, the courts will judicially take notice of it ; if not, it is matter of proof, and must be left to the decision of the jury.—1 Caines' Rep. 43 ; Gall. 443; 6 Peters (U. S.) 714; 2 *ib.* 148; 5 Cranch 492; 18 Johns. 230; 3 Day 346; 9 Mass. 155; Doug. 511; 4 Esp. 53; 6 Binn. 586; 5 Munf. 483; 9 Wheat. 581; 2 Gill & Johns. 136; 8 Wend.

266; 5 Pick. 15 ; 6 Port. 123 ; 27 E. C. L. Rep. 406 ; 34 *ib.*
227; 2 Green. Ev. p. 207; 2 Stark. Ev. p. 452.

JOHN T. TAYLOR, *contra.*

(Mr. Taylor's brief has never come to the Reporter's hands.)

CHILTON, C. J.—1. The court properly admitted Brewer
to testify. He swears that he has no interest, and can be
neither gainer nor loser by the result of this case ; and Fowler,
his confidential clerk, sustains him as to an entire absence of
any interest. Besides this, he was examined by consent of
defendant's counsel, which consent the court required should
be given, or the cause should stand continued, being satisfied
that the plaintiff was taken on surprise by the statement in-
serted in the deposition of Hierne that he was a partner with
the plaintiff. It was discretionary with the court to impose
the terms it did, and we think the discretion was very pro-
perly exercised. No court ought to suffer the rights of parties
to be swept away by such inadvertencies of commissioners,
when they are clearly shown to exist.

2. The plaintiffs having declined to read the deposition of
Hierne, the defendant read the same to the jury ; and the
court charged, that by reading it to the jury, Jewell had made
it his own testimony. What are we to understand, in legal
parlance, by testimony belonging to a suitor ? Clearly that
it pertains to him who introduces it. The appellant in this
case introduced it, while the opposite side refused to do so,
and he thus made it his testimony,—read the whole of it
without objection. After this, it does not lie with him to say
it is illegal or incompetent. " Our conclusion," says the court,
in Hallett & Walker v. O'Brien, 1 Ala. R. 589, " is, that where
a paper or deposition is read as evidence to the jury, the party
using it thus admits it to be proper evidence," &c.

3. The charge of the court assumes that there was no evi-
dence of custom before the jury. If there was such evidence,
then the charge is erroneous, as it should have been left to the
jury to determine upon the conflicting proof whether the cus-
tom was sufficiently made out. What is the proof upon the
subject of a custom contrary to the rule of law which obtains
in the absence of it? The only evidence in this record is

found in the proof made by the witness Hanna, who testified, ".that he was a factor in the city of Mobile, and had been since the year 1838 ; shipping cotton was not his regular business, but he had frequently shipped it on his own account and on account of planters, and it was drawn against in each instance ; that in the/ absence of instructions, the uniform custom of merchants, in such case, was, for the holder of the cotton to sell to meet the bill," &c.

It appears that the cotton was shipped to New York, and a bill was drawn by the appellant upon the consignees, payable, we must presume, at the place of business of the latter, namely, in New York. It is evident, then, that the transaction, as respects the sale of the cotton to meet the bill, is to be governed by the law of the place where it is to be carried out and executed. The proof of a custom, made by the witness Hanna, confined it to no particular locality, and restricted it to no particular time. He says, it was the *uniform* custom of merchants for the holder to sell to meet the bill. He does not confine it to New York, nor to Mobile, nor any other particular place, but it is general—the uniform custom of merchants ; that is, it is invariable, the one mode in which the transaction is performed. What is this but proof of the law merchant as applicable to this bill and shipment? This is but a system of customs, acknowledged and taken notice of by merchants and commercial nations ; and those customs constitute a part of the general law of the land,—hence their existence will be judicially taken notice of by the courts, and cannot be proved by witnesses.—Bouv. Law Dic., title "Law Merchant." The court, therefore, very properly held that this was no proof of a custom, as it could not be regarded, tending as it did to establish the *law merchant* to be otherwise than it really existed, and not a particular usage or custom.

Although, as an abstract proposition of law, the charge, that a custom could not be proved where the witnesses contradicted each other, is erroneous ; still it could not possibly have injuriously affected the appellant, when applied to the evidence in the bill of exceptions ; for the court, as we have shown, properly told the jury there was no evidence of custom before them ; the proof not tending to show a particular custom variant from the general law merchant, but what the law

merchant was as applied to the facts of the case. This, as we have said, could not be proved by witnesses; it was matter of law for the court.

Aside from the fact that the court might well have disregarded the proof of Hanna, as tending to establish what the law merchant was, and as showing it to be different from the rule which the court was judicially bound to know and enforce, it was so vague as to the length of time such custom had obtained, and general and indefinite as to the place of its existence, as not, *prima facie*, to enter into and form a part of this contract, so as to control its provisions as a particular usage of trade. In any aspect, therefore, in which it can be viewed, the charge as to the custom and the mode of proving it contains no error which could possibly have been prejudicial to the appellant.—Price v. White, 9 Ala. 563, and cases cited.

The charges asked, being in conflict with the views we have expressed, were properly refused by the court.

It is true that much of the testimony of Hierne is secondary, and would have been excluded had the plaintiff offered it, if the defendant had objected to it. But the plaintiff declined offering it, and the defendant himself offered it. He cannot, therefore, object to it as illegal. If the jury believed the proof, it clearly made out the plaintiff's case.

As to the charge upon the refusal of the plaintiffs to produce a letter spoken of by the witness Hierne, it is only necessary to say, that no inference prejudicial to a party can be drawn from the non-production of a document of this character, under these circumstances. The non-production after notice would have justified parol proof of its contents; nothing more.

There is no error in the record, and the judgment is affirmed.