## GAREY vs. MEAGHER & CO.

[ACTION AGAINST OWNERS OF STEAMBOAT FOR NEGLIGENCE.]

1. *Liability of steamboat-men for loss of cash-letter.*—Held, on the authority of *Hosea v. McCrory*, 12 Ala. 349, that the owners of a steamboat are responsible, as common carriers, for the loss of a cash-letter delivered to the clerk, if the evidence satisfies the jury that it is the general custom of steamboats to carry such letters, although they are delivered to the clerk, and are carried without charge or reward.

2. *Custom not proved by opinion of witnesses.*—A custom of trade, limiting the liability of the owners of a steamboat for cash-letters, cannot be established by the opinions of witnesses, to the effect that the clerk only is responsible.

APPEAL from the Circuit Court of Mobile.

Tried before the Hon. NAT. COOK.

THIS action was brought by the appellant, against the owners of the steamboat *William Jones, jr.*, to recover the sum of $1550, with interest thereon, alleged to have been delivered to the defendants, in the city of Mobile, on the 23d December, 1853, to be delivered to Greenwood & Co., at Benton, in Lowndes county, and to have been lost by their negligence. The defendants pleaded, "1st, the general issue; and, 2dly, that the money was not delivered to them as alleged in the complaint.".

"On the trial," as the bill of exceptions states, "the plaintiff introduced evidence tending to show, that the defendants were the owners of the steamboat *William Jones, jr.*; that on the 22d December, 1853, Messrs. Tarleton & Whiting, his factors in Mobile, enclosed $1550 to him in a letter directed to Benton, Lowndes county, and handed it to the clerk of said boat, on board the boat, to be carried to Benton; that said letter was never delivered at Benton, nor to him, but was lost; also, that a large portion of the money transmitted up the country was sent by steamboat, but that it was carried without charge or reward. The defendants then introduced Mr. Whitaker, of the firm of St. John, Powers & Co., who testified, that

the house of which he was a member, sent large amounts of money by the boats; that nothing was ever paid for it; that he and his partners always considered that the clerk of the boat alone, to whom it was generally delivered, (if any one,) was responsible for its delivery, and not the owners of the boat; that the letters were carried as a favor, and for the accommodation of the public; that the boats could receive or reject such letters, as they pleased; and that he did not know what was the understanding of others. The plaintiff objected to this testimony, but the court allowed it to go to the jury; to which the plaintiff excepted.

"The defendants then introduced as witnesses six or eight commission-merchants, who testified, that money was frequently sent by the boats, but without charge or reward; that it was usually handed to the clerk, and no receipt for it was asked or given; that they considered the clerk alone responsible for its delivery, and not the owners of the boats; and that this, so far as they knew, was the general understanding, though some of them stated, that others engaged in the same business thought the boats were liable. To this testimony the plaintiff objected, and excepted to the overruling of his objection. The defendants then introduced as witnesses a number of steamboat-captains, who testified, that money in cash-letters had, for many years, been sent by their boats; that no charge was ever made for it, no compensation received, and no receipt given; that they did not consider the boat liable, unless it received pay, or gave a receipt for it; that it was not the business of the boat, and that they looked upon it as a favor done by the clerk for the accommodation of the public. To this testimony also the plaintiff objected, and reserved an exception to its admission by the court. These witnesses stated, on cross examination, that the question of the liability of the boats was raised five or six years ago, and there was a difference of opinion about it, in consequence of which, in November, 1853, most of the steamboats stuck up notices, stating that they would make specific charges for carrying cash-letters; that the defendants in this case, with others, did so; that

the idea was abandoned, in a week or two, in consequence of the opposition made to it, and no charge had ever since been made; that the carrying of cash-letters was not a part of their business, but was the mere act of the clerk; that they did not consider the boat liable; that the letters were handed to the clerk, and put in the iron safe of the boat; that the captain had nothing to do with them, and generally knew nothing of such letters being received; and that the clerk and the boat were subject to the authority of the captain. Some of them stated, that they did not think it would affect the business of the boats, if they were to refuse to permit the clerks thus to receive and carry such letters; but others stated, that if it was not general, it would probably give offense to some, and, for a time, have some influence on their business. The plaintiff then introduced two commission-merchants— Tarleton, the plaintiff's factor, and one William J. Ledyard—each of whom testified, that he had been engaged as a factor in Mobile for many years, did not know of any custom or usage that the clerk alone was considered responsible for the non-delivery of cash-letters, and had always considered the boat liable for their non-delivery. All the witnesses examined had been engaged for many years—say, from ten to twenty years—in sending cash-letters.

"The court charged the jury as follows: 'If the proof shows that it is customary in Mobile, among factors, to transmit money to their customers in the interior through the hands of the clerks of the boats, enclosed in letters, to be delivered at the places designated; and that such letters are not carried as part of the business of the boats, and are not charged or receipted for in any manner as freight; and that the owners of the steamboats do not invite or solicit such business, but allow the same for the mere accommodation of the public; and that the money in this case was sent by the clerk of the boat, delivered to him by the plaintiff's factor, to be delivered to the warehouse-keeper at Benton, without charge, and without the knowledge of the owners, or any special promise from them to deliver it,—then, although the plaintiff may have

considered that, by ordering the money to be so sent, the owners of the boat would be liable, they would not be liable upon such evidence, and their verdict upon that state of facts should be for the defendants.'

"The plaintiff excepted to this charge, and requested the court to instruct the jury, '1st, that the evidence was not sufficient to establish the custom attempted to be proved;' and, '2dly, that the evidence does not prove that the plaintiff had notice of the custom, and that he is not bound by it, if established, unless he had notice of it;' each of which charges the court refused, and the plaintiff excepted."

The errors now assigned are, the rulings of the court on the evidence, the charge given by the court, and the refusal of the charges asked.

E. S. DARGAN, for the appellant.

THOS. H. HERNDON, contra.

STONE, J.—In the case of Hosea v. McCrory, 12 Ala. 349, it was submitted to the jury to determine, whether "it was the custom and usage for clerks (of steamboats) to carry (cash) letters;" and this court approved and affirmed a charge of the court in that case, which asserted that, "if the proof showed it was the custom and usage for clerks to carry letters, the clerk must be regarded as the agent of the master, and a delivery to the clerk was a delivery to the master." In commenting on this charge, our predecessors said, "this, we think, was a correct exposition of the law on this subject."

The case of Hosea v. McCrory was decided more than ten years ago; and the presumption must be indulged that, on the faith of that decision, many cash-letters have been remitted, per steamboat, to the interior. We do not feel at liberty now to depart from it.

In the record we are considering, the proof of the usage to send cash-letters to the interior by steamboats, is equally strong with that made in the case cited *supra*. The proof is alike in that case and this, that the transportation of cash-letters is no part of the regular business of steam-

boats—that no receipt is given for them, and no charge made for carrying them; and that such letters are delivered to the clerk, and by him kept and delivered.

Applying the principles stated *supra* to this case, it should have been left to the jury to say, whether it was the general usage of steamboats to carry cash-letters to the interior; and if the jury found such to be the case, then the principle would apply, that the act of receiving the letter by the clerk would become the act of receiving by the master and owners.

[2.] This record contains no evidence of a custom of trade, or of the river, limiting the liability of the defendants. It only contains the opinions of witnesses, that the clerk only, and not the master, is liable in a case like the present. To give this evidence the effect claimed, would be to allow the opinions of witnesses to overturn the decision pronounced in this court in the case of Hosea v. McCrory, *supra.*—See Jewell v. Center & Co., 25 Ala. Rep. 498.

The charge given by the court, and the charges asked and refused, are in conflict with this opinion.

Judgment of the circuit court reversed, and cause remanded.