# Herring, Farrell & Sherman *v.* Skaggs.

*Action for False Representation in the Sale of a Chattel.*

1. *Action on the case for false representation or warranty in sale of chattels; when complaint sufficient.*—The forms of pleading contained in the Code have the force of law, and a substantial conformity to them is sufficient; and hence, a complaint in an action corresponding to the common law action on the case for a false representation or warranty in the sale of personal property, which conforms substantially to the form of complaint prescribed in the Code for a breach of warranty in the sale of chattels, is sufficient.

2. *Replication; when no departure from the complaint.*—While it is a general rule of pleading, both at common law and under the statute, that a replication must not depart from the allegations of the declaration in any substantial matter, yet, when the cause of action is stated generally in the declaration, the plaintiff may, if necessary, in a replication to a special plea, restate it in a more minute and circumstantial manner.

3. *Depositions; practice in reading to the jury.*—When a party reads in evidence a part of a deposition taken at the instance of his adversary, he thereby makes it his own testimony to the same extent as if he had taken it, and his adversary is entitled to read the whole of it; but

VOL. LXXIII.

[Herring, Farrell & Sherman v. Skaggs.]

whether it shall be read while the party offering a part of it is intro-ducing his evidence, or the reading of it shall be deferred until the introduction of evidence by the other party, is a matter of discretion in the primary court.

4. *Leading question; when proper.*—The recollection of a witness, testifying to declarations of a party touching the character of metal an iron safe was made of, being at fault as to the name given to the metal by such party, the name may be suggested to him by counsel of the party examining him, and he asked whether the name suggested is the true one; leading questions being often, of necessity, allowed to aid the memory of a witness in recollecting names.

5. *Sale of chattel by agent; no implied authority to warrant.*—A general agent for the sale of iron safes has no implied authority to warrant or represent the safes to be burglar-proof; and, in the absence of an express authority, the act of the agent in making such warranty or representation would not be binding on the principal, unless there existed, at the time of the sale, a custom in the sale of safes to warrant or represent them as burglar-proof.

6. *Same; custom from which authority to warrant may be implied.*—A custom from which the authority to make such warranty or representation may be implied, must be a usage of sellers of safes, so well settled, notorious, and continuous, as to raise a fair presumption, that it was known to buyer and seller, and that sales were made in reference to it.

7. *Custom; proof of.*—Such a custom is a fact, and is capable of proof as any other fact. It may be proved by evidence of facts and instances in which it has been acted upon; but it is not proved by evidence, that it was acted upon in a few particular instances of dealing; nor is such evidence admissible to establish its existence.

8. *Ratification by principal of unauthorized fraudulent act of agent; what necessary to.*—If an agent, with authority to sell, defrauds a buyer dealing with him, the principal, not having authorized or participated in the wrong, is entitled to a rescission of the contract; but if, with knowledge of the wrong, he receives or retains the purchase-money, he can not claim immunity on the ground that it was the unauthorized act of the agent. The mere reception or retention of the purchase-money, without knowledge of the wrong, will not, however, operate a ratification, or involve the principal in liability for the fraud.

9. *Abstract charge; when error to give.*—If, on appeal, this court is reasonably convinced that an abstract charge given at the request of the appellee, although asserting a correct proposition of law, has misled the jury, the charge will be held error.

APPEAL from Talladega Circuit Court.

Tried before Hon. LeROY F. Box.

This cause was before this court at a former term, when the judgment of the lower court was reversed and the cause remanded.—See *Herring, Farrell & Sherman v. Skaggs*, 62 Ala. 180. The suit is by Newton J. Skaggs against Silas C. Herring, John Farrell and Elijah Sherman, partners trading under the firm name of Herring, Farrell & Sherman, and was commenced by attachment on 26th December, 1871. The complaint contains three counts, the substantial averments of which are as follows: In the first count it is alleged, that on or about the 28th December, 1870, the plaintiff purchased of the defendants an iron safe, designed for the purpose of holding and securing money and valuables, at a designated price then agreed

[Herring, Farrell & Sherman v. Skaggs.]

on, and afterwards paid; that he was induced to purchase the safe by representations made to him at the time of the purchase by the defendants, to the effect that the safe, which plaintiff had not seen, and which was afterwards delivered to him, was made of chilled iron, or of some sort of unusually hard and tough iron, a half inch in thickness, and of such a character that a burglar, "with approved implements of his trade," could not effect an entrance into the safe in less time than twenty-four hours; and that it would take twelve hours for two burglars, similarly armed, to enter it; that on the faith of said representations, and confidently believing them to be true, the plaintiff was thereby induced to purchase the safe, and afterwards to place it in his store, and to deposit therein designated personal property of great value and a large amount of money, to-wit, the sum of $5000, as he afterwards did, locking said safe and leaving said property and money enclosed and locked up therein; and that afterwards, to-wit, on or about 22nd June, 1871, in the night-time, and after said store had been closed, and plaintiff and his employees had retired to rest, the said safe was violently broken open by a burglar, or burglars, or other person or persons unlawfully engaged therein, and the said property and money, so deposited in said safe, was taken and carried away by such person or persons, and thereby became and continued to be wholly lost to the plaintiff. It is then averred that said representations were false, and, when made, the defendants knew them to be false; that they were fraudulently made and intended by defendants to injure the plaintiff and to induce him to purchase the safe; that they were of facts not perceptible to plaintiff, and which, by the use of ordinary diligence, he could not have discovered; that if said representations had not been made, he would not have purchased said safe, nor would he have risked his said property and money therein; that if said representations had been true as made, said property and money would not have been taken and lost to plaintiff, but the same would have been safely kept and preserved to him; and that said representations were not only false, but were grossly false, and were calculated and designed by defendants to injure the plaintiff; "and they did injure the plaintiff, as aforesaid, for and because the said safe was made of thin iron, of less than three-eighths of an inch in thickness, and about one-sixteenth of an inch in thickness, easily forced and broken, and was forced and broken and entered far more easily than defendants represented that it could be done; and such being the facts of the case, the said defendants have greatly damaged the plaintiff," etc.

The second count is in these words: "The plaintiff claims of the defendants the other and further sum of five thousand

[Herring, Farrell & Sherman v. Skaggs.]

dollars, as damages for falsely and fraudulently representing to plaintiff that a certain iron safe, sold and delivered by them to plaintiff, was made of very tough, hard iron, a half inch in thickness, capable of resisting all efforts forcibly to enter it by one well provided burglar for the space of twenty-four hours, and all efforts of two well provided burglars for the space of twelve hours; which facts were not perceptible to plaintiff, and which, by the use of ordinary diligence, plaintiff could not have discovered; whereby the plaintiff was induced to purchase said safe, and to risk in it a large amount of money, to-wit, five thousand dollars, or other large sum, whereby the said sum of money was lost to plaintiff, by being taken from said safe by a burglar or burglars, or other person or persons, by the use of force unlawfully, when such person or persons could not have done so, if such representations had been true. And plaintiff avers that after he had received said safe from defendants, and whilst he risked his money and other property in it as aforesaid, he had and kept said safe in his store-room, in which, during said time, he was doing business as a merchant in the town of Talladega, and during which time the loss aforesaid occurred; and further, that the said safe was made of thin iron, of less than three-eighths of an inch in thickness. To the damage of plaintiff five thousand dollars; and hence this suit."

The third count alleges a sale of the safe through and by one Stewart as agent of the defendants; and it is averred that the defendants, being dealers in such safes, employed said Stewart as their agent, and authorized him "to sell such safes, and did hold him forth to the public residing in and about the town of Talladega, Alabama, and elsewhere, as their general agent for the sale of iron safes, and such agent, being in the exercise and discharge of his duties and employment as such agent, did sell to plaintiff," etc. The other averments of this court, touching the sale of the safe, the representations made, their falsity, and the loss and damage sustained by the plaintiff, are substantially the same as those contained in the first count, except that the defendants are not thereby connected with the alleged false representations and fraud of the agent. After the remandment of the cause, on former appeal, this count was amended, by averring that the representations made by said agent were made by the authority of the defendants, and that the defendants "then and there knew them to be false."

To each of the counts the defendants demurred on several grounds. The court overruled the demurrers, and thereupon the defendants filed two pleas, one, in effect, the general issue, and the other a special plea, averring, in substance, that the contract for the sale of the safe was made in writing, they

acting by and through the said Stewart as their agent, who, after the contract was executed, forwarded it to them, and, on its receipt, they shipped the safe to the plaintiff; that at the time of the negotiation said Stewart had and exhibited to the plaintiff a pamphlet issued by them, by which the safe sold to plaintiff was described as a fire-proof, and not as a burglar-proof safe; that Stewart had no authority from them to make the representations touching the safe charged in the complaint, or any other representations in reference thereto, than that it was "their improved fire-proof safe;" that if he made such representations, he did so without their authority, knowledge, or approval, and that they did not know at the time they received from the plaintiff the price of the safe, or at any other time "until since the alleged breaking and entering of said safe," that Stewart had represented it as any other than a fire-proof safe. The contract is copied in the plea, and is merely an agreement on the part of the defendants to ship to the plaintiff, without delay, one of their "improved fire-proof safes," of a designated size, etc., for a stated price, which the plaintiff agreed to pay within thirty days. The court having overruled a demurrer interposed to this special plea, the plaintiff replied thereto, averring, in substance, the execution of the contract set out in the plea, which is also copied in the replication; denying that said writing "contained the entire contract concerning the sale to him by defendants of the safe in controversy;" and averring that "in addition thereto, and pending the negotiations with the plaintiff for the sale of said iron safe, said Stewart, by authority of defendants," made stated representations as to the safe, which are substantially the same as are averred in the complaint; and that these representations constituted a part of the contract of sale. Then, after denying "all other matters and statements in the said plea contained, not admitted in the replication," and averring the falsity of the representations, the intent and purpose with which they were made, and the cause of plaintiff's loss and damage, substantially as averred in the complaint, the replication concludes: "And plaintiff further avers that after said contract and representations had been made in manner as aforesaid, and after loss to the plaintiff had occurred, as shown in the complaint, the defendants, being fully informed of the said contract, representations and loss, before the commencement of this suit, and after having received the full purchase-price of said safe, to-wit, the sum of $80, did retain said purchase-money, and would not return the same to plaintiff, but still retain it." To the replication the defendants demurred, assigning numerous grounds, one of which was, that it was an entire departure from the cause of action stated in the complaint. The de-

[Herring, Farrell & Sherman v. Skaggs.]

murrer having been overruled, the cause was tried on issues made up as above stated, the trial resulting in a verdict and judgment for the plaintiff for $4500.

On the trial, evidence was introduced tending to show the contract for the sale of the safe by Stewart, the defendants' general agent for the sale of safes, the representations made by Stewart, the falsity of the representations and plaintiff's loss, as alleged in his complaint. The plaintiff offered no proof, however, tending to show that the defendants ever authorized Stewart to warrant or represent the safe to be burglar-proof; or that the defendants had any knowledge or information that such representations had been made, at any time prior to the commencement of the suit. On the other hand, the defendants' evidence tended to show that Stewart had no authority to represent or warrant the safe as any other than a fire-proof safe; and that they had no knowledge whatever that such representations had been made, until the suit was commenced.

The plaintiff, while offering his evidence, read to the jury the answers of the defendant Farrell, examined on behalf of defendants, to certain direct and cross interrogatories, without reading the entire deposition. Thereupon the defendants offered then to read the balance of the deposition to the jury. To this the plaintiff objected; his objection was sustained, and the defendants excepted. The court, however, permitted the defendants to read in evidence the balance of the deposition, when they came to offer evidence in defense. A witness examined on behalf of the plaintiff, having testified that during the negotiations for the sale of the safe, Stewart exhibited to the plaintiff a piece of crude metal, as being the material, of which the defendants made all their safes, was asked by plaintiff, whether he could state the name by which Stewart called the metal; and having answered in the negative, he was then asked by plaintiff, whether he could give the name of the metal, if it were suggested to him; and to this he replied that he thought he could. Thereupon he was asked whether the name of the crude metal was "speigel eisen;" and he was allowed to answer, against defendants' objection, that it was; and the defendants excepted. One Storey, a witness examined on behalf of plaintiff, having testified that a short time before the burglary, he borrowed from the plaintiff $800, one evening after the bank had closed, and he returned the amount to the plaintiff on the next morning, further stated that plaintiff "got this money out of an old-style Herring safe." To this statement defendants objected, and moved to exclude it from the jury; but their objection and motion were overruled, and they excepted.

The plaintiff examined one Wood as a witness, who testified

that he had been engaged in merchandising since 1857, and in the town of Talladega since the war, and that there was "a custom in Talladega and vicinity, at the time of said sale, for agents of iron safe-dealers to represent the quality of the safes they offered to sell, as there was in the case of agents for the sale of other goods." On cross-examination, however, he further testified that "he did not recollect of any agent coming to him to sell safes prior to 1870; that in the fall of that year, he bought a safe of said Stewart, and did not know of such agent having sold safes to any other person." Thereupon, the defendants moved to exclude the evidence of said witness, but the court overruled his motion, and they excepted. Two other witnesses were examined touching the existence of such a custom, but their evidence only tended to show two instances of sales of safes known to them, upon which they based their statement that such a custom existed. Exceptions were reserved by defendants to the rulings of the court in allowing this evidence to go to the jury.

Exceptions were also reserved by them to charges given and to charges refused. The opinion does not render it necessary to set out these charges.

The rulings above mentioned, with others, are here assigned as error.

WALDEN & BISHOP, LEWIS E. PARSONS and BOWDON & KNOX, for appellants.

SAM'L F. RICE and GEO. W. PARSONS, contra.

BRICKELL, C. J.—We can not regard it as necessary to consider separately the several causes of demurrer assigned to the complaint. Some of them are not well taken, if the sufficiency of the complaint was tested by common law rules. The Code establishes a system of pleading essentially different from that prevailing at common law, and the forms of complaint prescribed are, it has been said, rather a statement of legal conclusions than of the facts which constitute the cause of action. *Randolph v. Sharpe*, 42 Ala. 265. These forms have the force of law, and it is expressly declared that substantial conformity to them is sufficient.—*Crimm v. Crawford*, 29 Ala. 623. This action corresponds to the common law action on the case for a false representation or warranty in the sale of chattels; and a form of a complaint for a breach of warranty in the sale of chattels is prescribed by the Code, to which this complaint conforms substantially, and it must, therefore, be regarded as sufficient.—*Herring v. Skaggs*, 62 Ala. 180.

It is a general rule in pleading at common law, unchanged

VOL. LXXIII.

by the Code, that a replication must not depart from the allegations of the declaration in any substantial matter.—1 Chit. Pl. 643; *McAden v. Gibson*, 5 Ala. 341; *Eskridge v. Ditmars*, 51 Ala. 245. A departure in pleading is said to be when a party quits or departs from the case or defense which he has first made, and has recourse to and assumes another new ground of complaint or of defense. This is not allowed, "because the record would, by such means, be spun into endless prolixity." 1 Chit. Pl. 644. But while it is not permissible for the plaintiff to depart from the cause of action stated in the complaint, and by a replication to resort to another new cause of action, yet, when the cause of action is stated generally in the complaint, he may, if necessary, in a replication to a special plea, restate it in a more minute and circumstantial manner.—1 Chit. Pl. 624. This is the character of the present replication; it is a more precise and particular repetition of the cause of action stated in the complaint, rendered necessary, or supposed by the pleader to have been rendered necessary by the special plea. The demurrer to it was not well taken.

The plaintiff, having read in evidence a part of the deposition of Farrell, taken at the instance of the defendants, thereby made it his own testimony to the same extent as if he had taken it.—*Jewell v. Center*, 25 Ala. 498. The defendants were entitled to read the whole; it could not be garbled by the plaintiff. But we can not see what injury could have resulted from postponing the reading of the whole, until the defendants were introducing their own evidence. The reading of the whole by them was not in the nature of a cross-examination of a witness introduced by the plaintiff; and it was a matter of discretion in the circuit court whether it should be read while the plaintiff was introducing evidence, or deferred until the introduction of evidence in defense.

The exhibition by Stewart of the metal, and his declarations in reference to it were contemporaneous with the sale and the alleged false representation. They were parts of the *res gestæ*, taking the term in its narrowest sense. If the recollection of the witness was at fault as to the name given the metal, there was no impropriety in repeating it to him, and inquiring, though the inquiry was in the form of a leading question, whether the name repeated was the true one. Leading questions are of necessity often allowed to aid the memory of a witness in recalling names.—1 Whart. Ev. § 501.

The statement of the witness Storey, that the money loaned him by the plaintiff was taken from an *old style Herring safe*, was not objectionable. In describing such a transaction, a witness will often involuntarily speak of time or place as connected with it.

[Herring, Farrell & Sherman v. Skaggs.]

It is an elementary principle, that an authority conferred upon an agent, whether general or special, unless a contrary intent is plainly manifested, includes the means which are necessary and usual to execute it with effect.—Story on Agency, § 60. An agent, "authorized in general terms to sell, is assumed to have power to take all the usual steps to affect the sale; and of what is usual, the jury is to determine."—Whart. on Agency, § 187. The sale in the present case was made by an agent of the defendants, who was without express authority to warrant the quality or capacity of the safe, or to make any other representation or warranty, than that it would correspond to a printed description with which he was furnished. It was in reference to this view of the case, that we said, when it was here at a former term: "In the absence of proof of express authority to warrant, it was incumbent on the plaintiff, to show a custom in the sale of safes to warrant them as burglar-proof. Either the express authority, or the authority implied from such proven custom, would constitute the act of the agent the act of the principal; but the law does not imply the authority from the fact that Stewart, who conducted the sale was a general agent." *Herring v. Skaggs*, 62 Ala. 186. The custom to which we referred was the usage of sellers of safes, so well settled, notorious, and continuous, as to raise a fair presumption, that it was known to buyer and seller, and that sales were made in reference to it. Such a usage is a fact, and is as capable of proof as any other fact. It may be proved by evidence of facts and intsances in which it has been acted upon. It is not proved, nor is evidence that it was acted upon in a few particular instances of dealing, admissible to establish its existence.—*Desha v. Holland*, 12 Ala. 513; *Austill v. Crawford*, 7 Ala. 335; *Smith v. Rice*, 56 Ala. 417; *M. & M. R. R. Co. v. Jay*, 61 Ala. 247; *Adams v. Otterback*, 15 How. (U. S.) 539; *Berkshire v. Proctor*, 7 Cush. 417. Applying this rule to the evidence which was introduced to show a usage prevailing in Talladega for agents offering safes for sale to represent the qualities of the safes, and it ought not to have been admitted. Three isolated instances of sales made in the course of three or four years are not sufficient or competent evidence to establish a usage of trade, by which the rights and liabilities of parties are to be measured and determined, to the exclusion of the known and settled principles of law. Usages of trade are not recognizable, unless they have the essential elements of certainty, notoriety, and continuity, bringing themselves home to the knowledge of those who are concerned in the trade or business to which they may pertain. The courts adhere strictly to this principle, as essential to a fair administration of justice. If it were departed from, uncertainty, insecurity in the transaction of business, and in-

[Herring, Farrell & Sherman v. Skaggs.]

justice would result.    Parties could not know what were their rights or duties, if they were to be determined by loose evidence of some merely local, indefinite and partial usage.    Evidence of a usage of sellers to represent the qualities of safes they sold or offered for sale, is essentially different from the usage it was permissible to prove in this case—a usage to give an extraordinary and hazardous warranty, that the safe had capacity to resist, for a definite number of hours, the arts or devices or violence of burglars.    Representations or warranties of the character and quality of a thing sold refer to the thing itself, and it may be usual to make or give them.    They have generally no reference to the acts of others, especially the unlawful acts of criminals; certainly not of absolute or comparative security against such acts.    It was error to allow this evidence to be submitted to the jury.    And it is a necessary result, that the several instructions which are based upon the hypothesis of the existence of a custom or usage in Talladega, for sellers, or the agents of sellers of safes to warrant them, or to make a warranty or representation of the kind imputed to the agent Stewart, are erroneous.

It is an elementary doctrine, that a principal may, by ratification, render himself liable for the unauthorized acts or declarations of his agent.    And if an agent to sell defrauds a buyer dealing with him, the principal, not having authorized or participated in the wrong, is entitled to a rescission of the contract; but if, with knowledge of the wrong, he receives or retains the purchase-money, he can not claim immunity on the ground that it was the unauthorized act of the agent—*Herring v. Skaggs*, 62 Ala. 186; 1 Smith's Lead. Cases (7th Am. Ed.) 349.    But merely receiving or retaining the purchase-money will not operate a ratification, or involve the principal in liability for the fraud of the agent.    Ratification is in the nature of a contract; it is the adoption of, and assent to be bound by the act of another.    There can be no ratification, unless there is previous knowledge of all the facts and circumstances attending the act to be ratified.—Story on Agency, § 239.    There is a want of all evidence that the defendants had any knowledge or information that Stewart had made the representation which is averred to be false or fraudulent, or had given any warranty whatever as to the quality of the safe, until after the commencement of this suit.    The instructions to the jury upon this point may state a correct legal proposition, but they are without evidence to support them; they are abstract.    It is a rule of this court, that an abstract charge, asserting a correct proposition of law, is not an error for which a judgment will be reversed, unless we are reasonably convinced that it must have misled the jury.—*Towns v. Riddle*, 2 Ala. 694; *Partridge v. Forsyth*, 29 Ala. 200;

[Clark, Adm'r, v. Guard.]

*Russell v. Erwin*, 38 Ala. 44. There can be no doubt that the jury were misled by the instruction to which we have referred; the verdict is convincing.

The judgment is reversed and the cause remanded.