## DESHA, SMITH & CO. v. HOLLAND.

12   513
100   359

1. A usage, that where cotton stored in a warehouse, was found to be in a damaged condition, the warehouseman should send it to a "pickery," to be "picked," and that the factor should be responsible for the expense of picking, is not unreasonable, or contrary to law.

2. It is not indispensable to the validity of a custom, that it be universally acquiesced in; it is sufficient, if it be general, and uniform.

3. The evidence to establish a custom, should show a certain, and uniform usage. Where the evidence is uncertain, and contradictory, the custom is not established.

4. A dormant partner is an allowable, but not an essential party.

Writ of Error to the Circuit Court of Mobile.

THIS was a suit instituted before a justice of the peace by the defendant in error, and removed by appeal to the circuit court, where the cause was tried by a jury, who returned a verdict against the defendants below, and a judgment being thereon rendered, they have prosecuted a writ of error to this court.   On the trial, the defendants excepted to the ruling of the presiding judge.   The plaintiff was introduced as a witness, and testified that in the month of February, 1846, and prior thereto, he was the proprietor of a cotton pickery in the city of Mobile, the business of which was to remove all the damaged cotton from a bale, so as to leave only that which was merchantable; that in the month and year above mentioned, two bales of damaged cotton were sent to the plaintiff's pickery by the clerk of the lessees of "Hitchcock's Press Warehouse," to be picked immediately, which was done accordingly; plaintiff was afterwards informed that defendants, as commission merchants, had stored the two bales of cotton in the warehouse, and he then charged them for the labor of picking.   This demand the defendants refused to pay, and the present suit is brought for its recovery.

Plaintiff was not requested by the defendant, or any clerk or agent of theirs, except as above stated, to pick the cotton.

65

One Killduff was then carrying on a pickery in Mobile, and plaintiff knew that he was generally employed by them to pick cotton which they held as factors. On the day when the two bales were sent to the plaintiff's pickery, and before they were picked, Killduff called on the plaintiff and demanded the cotton, informing him that he was employed by the defendants to pick them; this demand was refused, unless Killduff would produce a written order from the defendants, and no such order was adduced.

Plaintiff also stated, that when this cotton was picked, his brother, Thomas Holland, was interested with him in the pickery, the ordinary business of which was carried on in his (the plaintiff's) name. The firm name of J. S. Holland & Co. was generally used in large money transactions and bank business; but bills for cotton picking were usually made out in the plaintiff's name alone, and the pickery was generally superintended by him.

The plaintiff adduced evidence tending to show that a custom or usage existed in Mobile among factors, warehousemen, pickers and others, engaged in the cotton trade in that city, that a warehouseman with whom cotton was stored by a factor, might, upon its being found "country damaged," or damaged before it came into the warehouse, (which was known by its being internally injured), send it to any pickery he thought proper, to be picked without the knowledge or consent of the factor. In such case, the factor paid for the picking. To the introduction of this evidence, the defendants objected on the ground, that if such a custom or usage existed, it was unreasonable, contrary to law, and therefore not a good or valid custom; but the court overruled the objection—the evidence was permitted to go to the jury, and thereupon the defendants excepted.

Plaintiff further proved by several factors, cotton brokers, clerks of the latter and warehousemen in Mobile, that when cotton which was sold was found damaged, it was rejected by the brokers unless it was put in order. Under such circumstances, when the damage was small, the number of bales few, and a country damage, the warehouseman's clerk frequently sent such cotton to a pickery to be picked—when cotton was thus sent, the factor generally paid the bills of the

picker, sometimes they were paid by the broker, who was reimbursed by the factor.

Defendants proved by one of their clerks, that although they had been long and extensively engaged in business as factors and commission merchants, he had never known them to acquiesce in the custom or usage sought to be established. They also proved by several other factors, warehousemen and brokers, who had for a long time done a large business in the cotton trade in Mobile, that the general custom in the city in regard to picking damaged cotton, was, after a lot of cotton was sold by a factor to a broker, for the latter to send his clerk to the warehouse to examine it, and if any part of it was damaged, the broker or his clerk notified the factor thereof, that he might examine the cotton, and if necessary, give orders to have it picked. These witnesses stated that they did not know of any custom or usage in Mobile, that the warehouseman, or his clerk, might send damaged cotton without the consent of the factor, to any pickery to be picked. They however stated, that they had generally paid the picker's bills under such circumstances, when satisfied they were proper; but did not consider themselves bound to pay them.

Defendants further proved, that upon storing the two bales of cotton, the warehouseman gave a receipt for them, stating that they were in good order. There was, however, proof tending to show, that they were damaged internally so as to make it proper to pick them. Plaintiff also proved, that the defendants had once paid him a similar bill to that sued on.

The court charged the jury, that the warehouseman is in law the bailee of the factor, and only legally bound to take care of produce placed in his hands. But although his agency is thus limited, it may be extended by custom so as to bind the factor. If they believed that it was the general and uniform custom in the city of Mobile, for commission merchants to pay for the picking of cotton damaged internally, which was sent by the warehouseman to the pickery, and that the cotton sent in this instance was of that character, they should find for the plaintiffs; but, if no such custom has been proved, they should find for the defendants.

Thereupon, the defendants prayed the court to charge, that, even if there was such a custom as the plaintiff insisted

on, it was not good and valid in law; which prayer was denied: *Further*, that unless such custom, or usage, appears to have been universally acquiesced in by those engaged in the cotton trade at Mobile, it would not be good and binding on the defendants; which prayer was denied, but the court added, that the custom must be general and uniform, though it need not be generally acquiesced in. ·

The defendants prayed the court to charge, that if Thomas Holland was interested with the plaintiff in picking the two bales of cotton, then he ought to join with him as a party in this suit, and for the non-joinder the jury should find for the defendants; but the court held that as the amount was less than $20—the suit instituted before a justice of the peace and no formal declaration necessary, the objection could not thus be taken advantage of. To these several rulings, the defendants excepted.

A. F. HOPKINS and W. G. JONES, for the plaintiffs in error, insisted—1. The custom or usage attempted to be shown by the plaintiff below, was not a legal custom, or binding on the defendants below. A custom or usage, to be valid and binding, must be *certain, uniform, reasonable,* and sufficiently ancient to be generally known, and must not be contrary to established principles of law. The usage relied on in this case is uncertain, not uniform, unreasonable, and contrary to law, and was therefore not valid, and the evidence of it ought to have been excluded. [Pierce v. White, 9 Ala. R. 563, and the cases there cited; The Citizens' Bank v. The Nantucket Steamboat Co. 2 Story's R. 45; The Schooner Reeside, 2 Sumner's R. 569; Homer v. Dorr, 10 Mass. R. 26; Frith v. Barker, 2 Johns. R. 335; Collings & Co. v. Hope, 3 Wash. Cir. Ct. R. 149; Thomas v. Graves, 1 Reps. Const. Court, 309; Stevens v. Reeves, 9 Pick. 201.]

2. The omission of T. Holland, who was a partner in the business, and equally interested with J. S. Holland in the account sued on, was fatal. It makes no difference that it was a case before a justice of the peace. In proceedings before a justice of the peace, the misjoinder or nonjoinder of parties is fatal. [Smith & Hill v. Cobb, 1 Stew. 62; Moffet & Singleton v. Wooldridge, 3 Stew. 322; 1 Chitty's Pl. 10, 14,

15.] 3. One person cannot make another his debtor against his consent. [Weakley v. Brahan & Atwood, 2 Stew. Rep. 500.]

J. A. CAMPBELL, for the plaintiff in error. 1. Was there any thing unreasonable in the power and duty conferred upon the warehouseman as the agent of the factor? The local circumstances of the trade may render such a *usage* one of great propriety. The situation of the warehouses, the qualities belonging to warehousemen, and the convenience of factors, may render such care on the part of the warehouse-keeper important to the factor, and no reason can be given why it may not enter into the calculations of the parties, that the preparation of the cotton for sale by putting the bales in order, should not be made by the warehouse-keeper, as the agent of the factor. [2 Cowen & Hill's Notes, 1413, 1414; 1 Bailey, 553; Gibson v. Culver, 17 Wend. 305; 11 Johns. 107.]

2. Was it necessary for this usage to be universally known and acquiesced in? On this point the cases reported in 2 Peters, 148, 3 Greenl. 276, are directly in point. What evidence was necessary to sustain it? The court say that it must be uniform and certain, and generally acquiesced in. These are the terms in which the question of the existence of a usage is submitted to the jury. [1 Gallison R. 445; 3 Yeates, 318; 17 Wend. 305; 1 Carr. & P. 59; 9 Ala. 565.]

3. Was there any impropriety in bringing the suit in the name of John S. Holland? It was shown that he is the active and managing partner of the firm; that a firm name is not used in the pickery business; that it is only used in a class of transactions entirely different; that the contracts are made with John S. Holland, and that accounts are made in his name. It was not necessary to join Thomas Holland. [Story on Part. 171; 2 Gill & J. 171; 4 Cowen, 17; 3 Ib. 84; 4 Wend. 628; 4 B. & A. 437; 2 Taunt. 324.]

4. That an appeal or writ of error does not lie in this case. The claim before the court was for less than $20, and it is not competent for this court to revise the terms on which it was submitted to the jury. [Clay's Dig. 314, § 10; Ibid. 315, § 12.]

COLLIER, C. J.—It cannot be assumed, that the custom which the plaintiff sought to establish was *unreasonable*, and therefore contrary to law. The powers of a factor in the cotton trade certainly authorize him to appoint an agent to examine the condition of cotton consigned to him for sale or shipment, and to invest such agent with authority to put it in a situation that it may be disposed of in the one mode or the other. If he think proper, he may appoint the bailee with whom it is deposited for safe keeping, to perform this service. It is for the interest of the owner of the cotton that the factor should possess such a power; for an internal damage in a compressed bale, we all know frequently extends itself very rapidly, so that if the factor was compelled to obtain a special authority in such case, the loss to the owner would be frequently increased, before the progress of the damage could be arrested. If then he may appoint an agent to act for him in each, or in all cases, where cotton is consigned to him, is not a custom which makes the warehouseman an agent *pro re nata*, altogether reasonable? It is but the substitution of a standing, continuous authority, as a substitute for one specially created as occasion may require, and its reasonableness, whatever may be said of its liability to abuse, cannot be pronounced against.

If the warehouseman be an honest and prudent man, it would really seem peculiarly proper that he should be authorized to cause cotton stored with him to be freed from *internal damage*. Such damage it is said, and generally credited, sometimes generates combustion. To prevent such a result, the warehouseman and his agents would be likely to exercise circumspection—discover the damage more readily than any one else, and thus be enabled to take the promptest measures to prevent its extension. *Besides*, their experience would soon give them facilities for making such discovery more readily than most other persons.

Assuming the existence of the custom which makes the warehouseman the sub-agent of the factor, we can conceive of no objection to its extension, so as to make the latter the debtor of the pickery, for separating the damaged from the merchantable cotton. In this view of the case, we think the evidence objectd to, was properly admitted.

It is not indispensable to the validity of a custom, that it should be *universally acquiesced in ;* for this would be to annul all customs as to those who were unwilling to abide by them.    Instead of having the force of law, and being of general obligation, they would depend for their operation upon the gratuitous assent of every person against whom they were invoked.    It is enough if a custom be "general and uniform."

In respect to the necessity of making Thomas Holland a joint plaintiff, we think, that although it would have been competent to join him, it was not indispensable to do so. The evidence shows, that in the business of the cotton pickery, he was merely a dormant partner, and the law is well settled, that in such case he is an allowable, but not an essential party. [See Monroe v. Ezzell, at the last term.]    This view disposes of the case as presented by the record.    But as it would doubtless be more satisfactory to the parties, and to prevent any misapprehension, we would remark, that looking to all the facts recited in the bill of exceptions, they fall altogether short of establishing a custom, such as that of which the plaintiff's right to recover is predicated.    It is apparent from an examination of the evidence that it is contradictory, showing nothing like a certain and uniform usage, which is essential to its validity.    [Price v. White, 9 Ala. R. 563 ; 3 Watts' Rep. 178 ; 1 Hill's S. C. Rep. 270 ; Trott v. Wood, 1 Gall. Rep. 443 ; Buck v. Grimshaw, 1 Edw. Ch. R. 147 ; Consequa v. Willings, Pet. C. C. Rep. 230 ; Parrott v. Thacker, 9 Pick. Rep. 426.]    It is certainly true, that usages among merchants should be very sparingly adopted as rules of law, as they are often founded in mere mistake, and still more often in the want of enlarged and comprehensive views of the full bearing of principles, (2 Sumn. R. 377); and we would add, are not unfrequently intended to advance some particular interest at the expense of a large class of the community. Even where well intended, they are sometimes set up as a means of protecting selfishness and dishonesty.

But the *entire evidence, and its legal effect* is not submitted to our judgment.    We have only to decide the questions raised upon the record for revision—this duty has been performed, and we have only to declare that the judgment is affirmed.