| 56 | 417 |
| 95 | 475 |
| 56 | 417 |
| 100 | 359 |

# Smith & Co. *v.* Rice.

*Statutory Action of Detinue for Crop of Cotton, Corn, &c.*

1.  *Parol evidence; when admissible to show terms of contract not inserted in writing.*—When a mortgage, given for supplies furnished and to be furnished during the current year, does not state the times when, nor the quantities in which the supplies are to be furnished, the stipulations of the contract as to those matters may be proved by parol.

2.  *Custom; proof of.*—A custom among planters, "in relation to the manner of receiving supplies from merchants who advanced to them," cannot be established by the testimony of a single witness, who only states "that he

knew what had been the custom among his neighbors in relation to the matter since 1868," a period of several years.

3.   *Contract between employer and laborers, for cultivation of crop on shares.*—A contract between the owner or tenant of lands and his laborers, "by which he agrees to give them one-fourth of the cotton produced on said plantation during said year, and to feed them, as compensation for their services in making said crop," creates between them a tenancy in common in the crop.

4.   *Mortgage of interest in crop by tenant in common.*—If the owner or tenant of lands, having contracted with his laborers for the cultivation of a crop on shares, by which a tenancy in common in the crop is created between them, afterwards executes a mortgage for supplies on his interest in the crop, the mortgagee becomes a tenant in common with the laborers, until there has been a division of the crop.

5.   *What action lies between tenants in common.*—One tenant in common cannot maintain an action of detinue against the other, since neither is entitled to exclusive possession; but, if one convert the entire property, by destroying or disposing of it, the other may maintain trover for his interest.

6   *Error without injury in rulings against plaintiff.*—When the bill of exceptions purports to set out all the evidence, and shows that the plaintiff was not entitled to recover, this court will not reverse the judgment, at his instance, on account of any erroneous rulings adverse to him, since no injury to him could result from such rulings.

APPEAL from the Circuit Court of Autauga.

Tried before the Hon. JAMES Q. SMITH.

This action was brought by J. M. & J. A. Smith & Co., suing as partners, against William T. Rice, to recover "six bales of cotton, six hundred bushels of corn, one hundred bushels of peas, twenty-five bushels of potatoes, one lot of hay, and ten head of cattle," with damages for their detention; and was commenced on the 7th December, 1874. The plaintiffs claimed the property under the following mortgage, executed to them by the defendant :

"Know all men by these presents, that I, William T. Rice, of the county of Autauga, and State of Alabama, for and in consideration of the sum of seven hundred dollars, to me in hand paid by J. M. & J. A. Smith & Co., of said county and State, the receipt whereof I do hereby acknowledge; which said sum of money, as is evidenced by my promissory note, bearing even date herewith, and payable on the first day of October, 1874, is for meat, corn, and other supplies necessary to run a plantation, and also for the hire of four mules, for the present, to enable me to make a crop on W. J. Boon's plantation, formerly owned by myself, in the said county, during the present year, 1874, and without said advancement of seven hundred dollars I would not be able to make a crop on said plantation this year, besides the further consideration hereinafter mentioned ; I have given, granted, bargained, sold, and conveyed, and by these presents do give, grant, bargain, sell, and convey, unto the said J. M. & J. A. Smith & Co., their heirs, and assigns, all my right, title, and interest, in and to the following property : ten head of cattle," de-

scribing them, "and all my crop of corn, cotton, peas, potatoes, hay, &c., to be raised by me and my hands on my said farm, or on all other lands that I may cultivate the present year; with all my right, title, and interest in said property, warranted free from incumbrances, and against any adverse claim. *Upon condition*, that if the said W. T. Rice, his heirs, executors, administrators, or assigns, shall pay, or cause to be paid, the above sum of money, at the time, and in the manner specified in said note, together with all other sums that may be due the said J. M. & J. A. Smith & Co., for advances made in 1873, or any other sums for other advances for the present year, beyond the amount above specified, then these presents to be void; otherwise to remain in full force and effect: And if the said W. T. Rice, his heirs and assigns, fail to pay said note, in part, or in the whole, when the same falls due, or any other sums of money that may be due the said J. M. & J. A. Smith & Co.; then the said J. M. & J. A. Smith & Co., their heirs, or assigns, may, and are hereby authorized to take possession of the said property above conveyed, or any part of it, and sell the same immediately, without process of law, at public or private sale, for cash, and out of the proceeds pay said note or notes and accounts, as specified above, and all expenses, or sums that may be due. Witness my hand and seal, this 24th day of January, 1874."

On the trial, as the bill of exceptions shows, the plaintiffs offered in evidence the said mortgage, having proved its execution and registration, with the note therein described, and a similar mortgage given to them by defendant for supplies furnished to him during the year 1873, on which, as they claimed, there was a balance of several hundred dollars due to them; and two members of the plaintiffs' firm testified, as witnesses for them, that they furnished supplies to the defendant during the year, as he sent for them, except on one occasion; and each of said witnesses testified, also, "that plaintiffs never made any agreement with said defendant, either at the time of the execution of said mortgage, or subsequently, in relation to the manner in which said supplies should be furnished, except as stated and set forth in said mortgage." The defendant was examined as a witness for himself, and was asked by his counsel, "if, at the time of the execution of said mortgage, or subsequently, there was not an agreement between him and the plaintiffs, not incorporated in said mortgage, as to the manner in which the supplies provided for in said mortgage were to be delivered to the defendant;" to which he answered, "that it was understood and agreed between him and the plaintiffs, at the time of the execution of said mortgage, that said advances or supplies were

to be furnished or delivered by the plaintiffs to the defendant as they were the preceding year." To this question and answer, each, the plaintiffs objected, and reserved exceptions to the overruling of their objections.

The defendant was also asked by his counsel, " if he knew what was the custom among his neighbors, or the planters residing in his neighborhood, in relation to the manner of receiving supplies from merchants who advanced to them ;" to which he answered, " that he knew what had been the custom among his neighbors, in reference to matter inquired about, since the year 1868." He was then asked to " state what said custom was ;" and answered, "that it had been the custom among his neighbors, since the year 1868, to obtain their supplies from the merchants who advanced to them, in such quantities as they desired; sometimes getting as much as a hogshead of bacon at a time, and other supplies in proportion." To each of these questions and answers, separately, the plaintiffs objected, and reserved exceptions to the overruling of their several objections. No other evidence was offered in reference to said alleged custom; but the defendant introduced other testimony, tending to show that the plaintiffs had not furnished him with necessary supplies during the year, when he sent for them.

" The defendant testified, also, that he made a contract with his laborers, at the commencement of the year 1874, by which he agreed to give them one-fourth of the cotton produced on said plantation during said year, and to feed them, as compensation for their services in making said crop; that all the cotton and other crops seized by the sheriff, as shown by his indorsement on the writ, were grown or produced on the plantation mentioned in said mortgage, and upon the lands rented by him, during said year 1874; that one of said bales, before it was taken by the sheriff, had been turned over by him to one Erasmus Alexander, a laborer employed by him on said plantation during said year, as a portion of his interest in the crop, under a contract made with him before said crop was planted; that five bales of said cotton were left by him at his gin-house, with the understanding with the laborers who, under his contract with them, were to receive one-fourth of the same, until he could have a settlement with them; that all of said laborers claimed one-fourth interest in said cotton under said contract; that it was agreed between him and his laborers, that whatever advances he made to them during the year were to be deducted from their one-fourth interest in said cotton; that he had not had a settlement with said laborers, but had advanced to them from twenty-five to thirty dollars each; that these ad-

[Smith & Co, v. Rice.]

vances were obtained from plaintiffs, and the laborers knew that they were so obtained."

"The foregoing was all the testimony in the case; and the court thereupon charged the jury as follows: If the jury find from the evidence, that Erasmus Alexander contracted with the defendant to labor on his land for a portion of the crop to be grown, and that this contract was made before the recording of the plaintiffs' mortgage; and further, that one bale of cotton was the portion of the crop to which said Alexander was entitled out of the crop, and it was delivered to him, and was in his possession before the levy in this suit,—then plaintiffs are not entitled to recover this bale of cotton.

" 2. The court further charged the jury, that if they found, from the evidence, that the laborers (whose names are stated) entered into a contract with the defendant to labor on his land during the year 1874, and that, by the contract, the laborers were to receive out of the crop one-fourth of the cotton and other crops; and further, that the laborers worked on the defendants' land, and that said other five bales of cotton levied on were a portion of the undivided crop out of which the one-fourth was to be taken then on the land; and further, that said contract with the laborers was made by defendant before the mortgage to the plaintiffs was recorded,—then the plaintiffs are not entitled to recover in this action, as against the undivided interest of the laborers.

" The plaintiffs excepted to each of these charges, and requested the court to give the following charge, which was in writing: 'If the jury believe, from all the evidence in the cause, that the defendant, before the execution and registration of the said mortgage to the plaintiffs, made a contract with his laborers to cultivate the lands referred to in the mortgage, by which he agreed to give them certain portions of the crop produced on said lands during the year, as compensation for their labor, this conferred upon the laborers no rights paramount to those of the plaintiffs; and that if the defendant, at the time of the commencement of this suit, was indebted to the plaintiffs under the provisions of said mortgage, then the jury, under the proof in the cause, if they believe all the evidence, must find for the plaintiffs.' The court refused to give this charge, and the plaintiffs excepted to its refusal."

The charges given, the refusal of the charge asked, and the rulings of the court on the evidence, as above stated, are now assigned as error.

W. H. & W. T. NORTHINGTON, for appellants.—1. The testimony of the defendant, as to the alleged usage among his

neighbors in procuring supplies from merchants, was totally insufficient to establish a valid custom. They might have procured their supplies in Prattville, Montgomery, or Mobile; and if the evidence proved a valid custom in one of these places, it was equally applicable to the others. None of the essential elements of a valid custom were shown.— *Buford v. Tucker*, 44 Ala. 89.

2. The mortgage being silent as to the times at which, and the quantities in which the supplies were to be furnished, the law presumed that they were to be delivered at reasonable times, and in reasonable quantities; and parol evidence was not admissible to change or contradict this implied stipulation.—*Nave v. Berry*, 22 Ala. 382; *Davis v. Lassiter*, 20 Ala. 561.

3. The contract between the defendant and his laborers, as proved by his own testimony, created neither a partnership, nor a tenancy in common in the crops. They were to receive one-fourth of the crop, "as compensation for their labor" in raising it. They had no possession or control of the crops; and without unity of possession, a tenancy in common cannot exist. If they were tenants in common with the defendant, one of them might sell and appropriate the crop as it was gathered, and could not be punished criminally for doing so.—*Kirksey v. Fike*, 29 Ala. 206. The decisions of this court do not justify such a construction of the contract.—*Thompson v. Mawhinney & Smith*, 17 Ala. 362; *Smyth v. Tankersley*, 20 Ala. 212; *Moore v. Smith*, 19 Ala. 774; *Emanuel v. Draughn*, 14 Ala. 303.

DOSTER & ABNEY, with T. W. SADLER, *contra.*—1. The parol agreement, to which the defendant testified, did not contradict any stipulation of the mortgage, and was properly received.—1 Greenl. Ev. §§ 2ᵍ6, 288, 292, 294, 295 *a*; *Murchie v. Cook & McNab*, 1 Ala. 41; *Simonton v. Steele*, 1 Ala. 357; *McNair v. Cooper*, 4 Ala. 660; *Honeycut v. Strother*, 2 Ala. 135; *Strother v. Butler*, 17 Ala. 733; *Chamberlain v. Gaillard*, 26 Ala. 504.

2. As to the validity of the custom, see *Barlow v. Lambert*, 28 Ala. 704; cases cited in 1 Brickell's Digest, 518; 2 Sumner, 567.

3. Under the contract between the defendant and his laborers, they were tenants in common in the crops until a division was made between them.— *Williams v. Nolen*, 34 Ala. 167; *Strother v. Butler*, 17 Ala. 733; *Smyth v. Tankersley*, 20 Ala. 212. The mortgage purports to convey, and could lawfully convey to the plaintiffs, only the defendant's interest in the crop, which was that of a tenant in common; and

not having the entire and exclusive interest in the property, they could not maintain detinue.—*Parsons v. Boyd*, 20 Ala. 112; *Frierson v. Frierson*, 21 Ala. 549; *Price v. Tally*, 18 Ala. 21; *Miller v. Eatman*, 11 Ala. 609; *Bell v. Hogan*, 1 Stewart, 536.

STONE, J.—We do not think the testimony of the witness Rice, as to the alleged agreement, not expressed in the writing—"that, at the time of the execution of said mortgage, it was understood and agreed between plaintiffs and defendant, that said advances or supplies were to be furnished or delivered by the plaintiffs to the defendant as they were the preceding year"—offended the rule, that oral testimony will not be received to vary the terms of a written contract. We hold, that this contract, which is continuous in its character, belongs to a class which, on their face, indicate, that they do not express all the details to be observed in their performance. The writing is silent as to the times when, and quantities in which, the supplies were agreed to be furnished. In such case, if there was an agreement which supplied this omission, though not in the writing, such agreement may be proved. This is one of the exceptions to the rule which forbids that oral proof shall be received to add to, or vary, the terms of a written contract. To furnish supplies, is a very general term; and to cast on the court or jury its interpretation, without furnishing to them any guides therein, is necessarily to expose the question to uncertain and varying solution. Hence, any agreement, or conversation of the parties, shedding any light on this question, may be proved; and such proof does not vary any term of the contract, either in its letter or spirit.—*Self v. Herrington*, 11 Ala. 489; *Mobile Dock v. McMillan*, 31 Ala. 711; *Drake v. Goree*, 22 Ala. 409; *McLendon v. Godfrey*, 3 Ala. 181; *Brown v. Isbell*, 11 Ala. 1009; *Corbin v. Sistrunk*, 19 Ala. 203; 1 Greenl. Ev. §§ 286, 288, 292, 294, 295, 295a; *Garrow v. Carpenter*, 1 Porter, 359; *Wayland v. Mosely*, 5 Ala. 430.

2. If there be no positive agreement, fixing and defining the manner in which contracts, such as the one we are now considering, shall be performed, then the parties are presumed to contract in reference to the usage in the particular trade or employment, if there be such usage.—1 Greenl. Ev. § 292. But a custom or usage, to become obligatory, must be shown to be so general and uniform, as to raise the presumption that the parties knew of it, and contracted in reference to it.—*Desha, Smith & Co. v. Holland*, 12 Ala. 513; *McClure v. Cox, Brainard & Co.*, 32 Ala. 617; *Barlow v. Lambert*, 28 Ala. 704; *Ala. & Tenn. Rivers Railroad Co. v.*

*Kidd*, 35 Ala. 209. The proof of usage in this case was, we think, wholly insufficient; and that part of the testimony should not have been received.—*Steele v. McTyer*, 31 Ala. 676; *Ala. & Tenn. R. R. Co. v. Kidd, supra.*

3. The cotton in controversy was grown during the year 1874, on a plantation then in the possession of defendant, Rice. Only one witness testified as to the terms of the contract, by which Rice employed his laborers, whose labor cultivated the crop; and he testified, also, as to the interest of the laborers in the cotton in controversy. His testimony is as follows: "That he made a contract with his laborers, at the commencement of the year 1874, by which he agreed to give them one-fourth of cotton produced on said plantation during said year, and to feed them, as a compensation for their services in making said crop;  *  *  * that five bales of said cotton were left by him at his gin-house, with the understanding with his laborers, who, under his contract with them, were to receive one-fourth of the same, until he could have a settlement with them; that all of said laborers claimed one-fourth interest in said cotton under said contract." The other bale of said cotton had been previously given off by said Rice to a laborer employed under another contract, as part of his wages. The mortgage, under which plaintiffs claimed, was dated January 24th, 1874; and it was given to secure advances afterwards to be made, and in part to secure a debt for advances made the year preceding. This mortgage was filed in the probate office for record February 13th, 1874. Among other property, it conveyed "alll my crop of corn, cotton, peas, potatoes, hay, &c., to be raised by me and my hands on my said farm, or on all other lands that I may cultivate the present year, with all my right, title, and interest in said property, warranted free from incumbrance, and against any adverse claim."

In *Smyth v. Tankersly*, 20 Ala. 212, speaking of a contract not distinguishable from this, this court said, the parties to the agreement were tenants in common of the products to be grown and divided between them. In the case of *Thompson v. Mawhinney*, 17 Ala. 362, a similar contract was adjudged to create a tenancy in common. To the same effect are *Strother v. Butler*, 17 Ala. 733; and *Williams v. Nolen*, 34 Ala. 167.

4. Among the postulates of the second charge given are, that the jury should find that Rice's contract with the laborers was such as is stated in his testimony above, and that the contract was made before the mortgage to plaintiffs was recorded. These facts being found by the jury, it would necessarily result, on the principles above stated, that, but

for the mortgage, Rice and the laborers were tenants in common of the cotton that remained undivided; and the claim set up by plaintiffs being only the title of Rice conveyed by the mortgage (he could convey none other), it follows, that the plaintiffs became tenants in common, with the laborers, of the cotton so grown.

5. To maintain the action of detinue, the plaintiff must have the right to the immediate possession. One tenant in common has no right to dispossess another; and neither can maintain detinue against the other; for neither has the right to exclusive possession. If one convert the entire property thus held, by destroying, consuming, or disposing of it, the other may maintain trover for his interest; but he can not maintain detinue.—*Perminter v. Kelly*, 18 Ala. 716, and authorities there cited; *Williams v. Nolen*, 34 Ala. 167.

We have referred above to the question submitted by the court in its charge to the jury,—whether Rice contracted with the laborers before the mortgage to the plaintiffs was recorded. The charge made that one of the conditions of the defendant's defense. We recur to it, for the purpose of saying, that we do not, in this case, decide whether that inquiry was or was not material. We leave that question undecided. To answer it properly, would render it necessary to construe the mortgage, and ascertain whether it conveys any portion of the crop, other than that which properly belonged to Rice; and might also raise the question of laborers' lien. Upon these inquiries we propose not to enter, as they are unnecessary in this case.

If the supposed facts in the second charge given were found by the jury to be the true facts, then the plaintiffs could not recover the cotton sued for; not because they would show any right in Rice, or that plaintiffs had no interest in the cotton; but because they disprove entire and exclusive right in the plaintiffs to immediate possession, which is indispensable to the maintenance of the action of detinue. There was, therefore, no error in the second charge given.

What we have said above conclusively shows, that the Circuit Court did not err in the charge given, numbered one, nor in the refusal to give the charge asked.

6. We have said above, that the Circuit Court erred in allowing testimony of the witness Rice as to usage. When error is shown, injury will be presumed, unless the presumption is repelled, by showing affirmatively that it could not possibly have exerted any injury.—1 Brick. Dig. 780, § 100. But, if it be clearly shown that no injury resulted from the erroneous ruling, or that a losing plaintiff, who complains of the error, cannot recover in the action, then such error fur-

[Taylor v. Forsey.]

nishes no ground for a reversal.—1 Brick. Digest, 780, §§ 96, 97, 98; *Boswell v. Carlisle,* at this term. In the present record, all the testimony is set out. Tenancy in common was the question of merit, on which the charges were based, and on which the verdict was found. The usage attempted to be proved did not bear, in the least, on this question. It did not, and could not, enter into the defense on which the case went off. We hold, that the error in this case could not possibly have worked any injury to the appellants.

The judgment is affirmed.