# Mobile and Montgomery Railway Co. v. Jay.

*Action to Recover for Medical Services.*

1. *Principal; how may be bound by acts of unauthorized person.*—A single instance of recognition by the principal, of the unauthorized assumption of agency by a third person—as by payment of the debt contracted—in the absence of any warning, caution or notice to the person dealing with the supposed agent, will bind the principal as to him, for other similar contracts of such person; but the rule applies only to the person thus dealt with.

2. *Custom; what not sufficient to show.*—The mere act or habit of a railroad company, in paying for medical services rendered to employees injured in its service, does not necessarily establish a custom of such business; before it can have that effect, it must be shown to have been so generally known, and so well settled, as to raise the presumption that the services were rendered in reference to it.

APPEAL from Conecuh Circuit Court.

Tried before Hon. JOHN K. HENRY.

The appellee, Dr. A. Jay, jr., brought this action against the appellant, the M. & M. Railway Co., to recover compensation for medical services rendered to one Green Richardson, an employee of the company, who had been injured while in its service. The testimony showed that when said Richardson was hurt, one O'Brien, the supervisor of a portion of the appellant's railroad, was present, and that he requested the appellee to do all that was necessary for the injured man who was an old employee of the company, and it did not want him to suffer for anything. In compliance with this request, the appellee rendered services which were reasonably worth the sum sued for. Dr. Jay testified that after he rendered the services he made out his bill, and had a conversation with Jordan, the superintendent of appellant, and that Jordan refused to pay for said services, but said that it had been the custom of the company to pay for services rendered by phy-

sicians to employees who had been injured by defendant's cars, but as Richardson had sued the company, it would not pay the bill. Plaintiff then stated to Jordan that he had been employed by the supervisor, O'Brien, who had bound the company for plaintiff's services, to which Jordan replied that he would see O'Brien, and that if O'Brien had obligated the company, it would pay the plaintiff's bill.

The defendant examined one Corry, who testified that he had been the supervisor of a part of defendant's railroad for some years, and that he was now the supervisor of the whole road, and that his duties as such supervisor were confined to the keeping up of the track, road-bed and bridges of the road, and that he did not consider that he had authority to contract with physicians for medical services rendered to hands of the road. He further testified, that O'Brien's general duties and authority, while supervisor, were the same as those of the witness. This witness also testified that he knew of but one instance where the company had paid a similar bill, and that in that case the witness had employed a physician, and told him that he would be responsible personally for his compensation, and would pay himself if the company did not; that the bill was only twenty dollars, and the company voluntarily paid it, and the injured party did not sue the company. This was all the evidence.

The court, of its own motion, charged the jury, "if they believed from the evidence, that previous and up to the rendition of the services of plaintiff, for which suit was brought, it had been the custom of the defendant to pay bills for medical services, rendered by physicians to employees of the defendant, who had been injured by defendant's cars, then they were liable in this suit for the reasonable value of the services rendered by plaintiff to Green Richardson, if he was injured by defendant's cars while in its employ." The appellant duly excepted to this charge. The jury rendered a verdict for plaintiff, and the company bring the case here by appeal, and assign the charge of the court as error.

HERBERT & BUELL, for appellant. — The charge given ignores the necessary elements of a legal custom. All the evidence is set out in the bill of exceptions, and it wholly fails to establish any such custom or usage, as can be looked to in the interpretation of contracts.—See *A. & T. R. R. Co. v. Kidd*, 35 Ala. 22; *Steele v. McTyer's Administrator*, 31 Ala. 676; *Partridge v. Forsyth*, 29 Ala. 200.

[M. & M. Railway Co. v. Jay.]

JOHN D. BURNETT, *contra*.—The custom to pay for medical services rendered employees was clearly proved, and the company can not revoke it in this instance. The custom becomes a part of the contract.—See *Lindsay v. Gazzam*, 6 Port. 123 ; *Ezell v. English*, ib. 311.

STONE, J.—There is a class of cases in which a single act in recognition of agency, will bind the principal for contracts afterwards made by such supposed or assumed agent; as, " when a father pays, without objection, an account contracted by his minor son while attending school at a distance from home, the payment is equivalent to a recognition of the son's authority to bind him, and will render him liable on a similar account subsequently contracted."—*McKenzie v. Stevens*, 19 Ala. 691. This rests on the principle that the act of the agent is thus distinctly ratified and admitted; and, there being no warning, caution or notice given to the person thus dealing with the agent, the law treats this as an authority for further dealings with such agent. But the principle extends only to the person, whose prior dealings with the agent have been, in this manner, ratified. Payment to A of an unauthorized account, is no license or authority for similar credit extended by B. The principal may be willing that the agent, actual or assumed, may bind him to A; and payment to A, without objection or notice, is evidence of such willingness. It is not evidence of a willingness to become bound to B. There is no evidence in the present record that the railway company had ever paid a charge, contracted as this was, to Dr. Jay, the plaintiff in this suit. Hence this case does not fall within the principle above stated, and we do not understand counsel as contending that it does.

It is contended for appellee, however, that it was the usage or custom of the Mobile and Montgomery Railway Company to pay for medical services rendered as the proof tends to show these were, and that, therefore, the plaintiff below was entitled to recover in this action. When a custom or usage of trade, such as is here contended for, is proved to exist, and to be general, all persons engaged in such trade or pursuit, are presumed to contract in reference to it, and it thus becomes a part of their contract, unless there is express provision in the contract which repels the inference. But a mere act or habit of a trader is not necessarily enough to establish such custom. To become a usage or custom of trade, and thus to make such custom a part of the law of the case, it must be shown to have been so generally known, so well

settled, as to raise the presumption that the parties contracted in reference to it.—*Mobile Marine Dock and Mutual Ins. Co. v. McMillan & Sons*, 27 Ala. 77; *Barlow v. Lambert*, 28 Ala. 704; *Fulton Ins. Co. v. Miller*, 23 Ala. 420; *Ala. & Tenn. R. R. Co. v. Kidd*, 29 Ala. 221; *Austill v. Crawford*, 7 Ala. 335; *West v. Ball*, 12 Ala. 513. In the present case the proof of usage was by no means clear or conclusive. Plaintiff testified the superintendent of the railway company told him, after the services were rendered, "that it had been the custom of the defendant's company to pay for services rendered by physicians to employees who had been injured by defendant's cars;" but he gave a reason why the company would not pay the present demand. Corry, a witness for defendant, testified that he was, and for several years had been supervisor of defendant's railroad—and that as such supervisor he did not consider he had authority to contract with physicians for medical services rendered to hands of the road. He had known of but one instance in which defendant had paid a similar bill, and that was a case of a hand who had been injured by defendant's cars, and witness had employed a physician to attend him, and told the physician that he, witness, would be personally responsible for his compensation, and would himself pay him, if the company did not; that the bill was only twenty dollars, and the company voluntarily paid it. Plaintiff in this case testified that a former supervisor of defendant's road had employed him to render the services, for which the present suit was brought, and had told him the company would pay him for such services. It is doubtful if this testimony tends to prove a usage or custom of trade, which enters as an element into contracts supposed to be made in reference to it. The most that could be made of such testimony, in this connection, would be, to submit it to the jury for their inquiry, whether such custom existed, and was so general and known, as to raise the presumption that these parties contracted in reference to it.— *Steele v. McTyer*, 31 Ala. 667. The court erred in the charge to the jury, that " if they believe from the evidence that previous and up to the rendition of the services of plaintiff, for which suit was brought, it had been the custom of defendant to pay bills for medical services rendered by physicians to employees of defendant, who had been injured by defendant's cars, then they were liable to the plaintiff in this suit for the reasonable value of the services rendered by plaintiff to Green Richardson, if he was injured by defendant's cars

while in its employ." The testimony fails to make a case that falls within either of the principles stated above.

The real question in this case is, had O'Brien authority to employ Dr. Jay, and thus bind the railway company? On this point, the testimony of the several witnesses should be weighed by the jury, under appropriate instructions.—*McClung v. Spotswood*, 19 Ala. 165; *Bank of Montgomery v. Plannett*, 37 Ala. 222. Of course, if O'Brien had authority to bind the corporation, either express or implied, and did employ plaintiff, as claimed by him, the company could not afterwards absolve itself from the liability, by reason of the suit for damages brought by Richardson.

Reversed and remanded.