# Buyck & Cain *v.* Schwing, Surviving Partner.

100   355
106   660

## *Action of Assumpsit.*

1. *Custom; when proof of admissible.*—Proof of a custom as an element of a contract is only admissible where the contract is expressed in language of ambiguous or doubtful meaning, or is silent upon some material inquiry of fact. and such custom must be reasonable, not against the law or public policy, not opposed to any express term of the contract, and must be so general and so known as to justify the presumption the parties knew of it, and contracted in reference to it.

2. *Same; charge of the court.*—On an issue as to the existence of a general custom in L. as claimed by plaintiff, and as to its effect on a contract between plaintiff and defendant, an instruction was erroneous which ignored all inquiry as to the length of time the custom had prevailed, and as to defendant's knowledge of its existence, or opportunity of acquiring such knowledge.

3. *Same; as affecting customer of warehouseman.*—The customer of a warehouseman is liable for his proportionate share in the expenses incurred by the warehouseman in prosecuting suits for the recovery of insurance money for goods destroyed in the warehouse, where the customer is chargeable with knowledge of a general custom of warehousemen to keep a customer's goods insured in open policies in favor of the warehousemen on goods held in trust, and to charge each customer for such insurance at a certain monthly rate on his goods covered by such policies.

4. *Costs and expenses as between warehouseman and customer.*—The fees of an attorney, employed by the executor of a deceased partner in the warehouse firm to assist the attorney employed by the surviving partner to prosecute suits against insurance companies, were not a part of the expenses, for a pro rata share of which a customer was liable; nor was money paid by the surviving partner for office rent during the pendency of the suit a proper part of such expenses.

5. *Same.*—Money paid for special bailiffs to serve papers, for copies of testimony, and for clerk's and sheriff's fees were proper parts of such expenses.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

Appellee, as surviving partner, sued appellants to recover a proportionate share of the costs and expenses incurred by plaintiffs firm in recovering the amounts of several fire insurance policies claimed to have been taken out by plaintiff's firm for the joint benefit of themselves and appellants.

The complaint contained the common counts. On the trial of the cause the defendant pleaded the general issue, and by special plea denied the debt, and pleaded set-off, and also the statute of limitations of Kentucky. The plaintiff

filed a replication alleging that while the plaintiff's firm, of which he was the surviving partner, had its domicile in Kentucky, the defendants lived in Alabama, and the cause was therefore controlled by the statute of this State. Defendants demurred to this replication, which being overruled, issue was joined.

The evidence introduced by the plaintiff tended to show the following cause of action: On January 24, 1885, Peter A. Buyck wrote to McD. Cain, Jr., in Louisville, Ky., the following letter, which is the basis of the contract sued on in this case: "Wetumpka, Ala., January 24, 1885. McD. Cain, Jr., Louisville, Ky.—My Dear Nephew: Yours of the 19th inst. received and noted. I am perfectly willing and at your discretion to have J. Balmforth & Co. to buy for us on joint account and risk 1,000 to 2,000 bags peanuts upon the following terms: Commission for buying and selling, five per cent.; storage per bag per month, five cents; insurance per month, one-eighth of one per cent.; interest on money for purchase of nuts, 8 per cent. per annum. Balmforth & Co. to hold the nuts for us six (6) months, if we desire, or to sell same when ordered by you. If they do not want to furnish all the money for purchase of nuts, I will send them check on New York for $500.00 as bonus, and in the event of a decline in nuts I will at any time make our bonus good when advised by you, and when nuts are sold I will be responsible for any loss, and will remit to cover same. Yours sincerely, Peter A. Buyck." In pursuance of this agreement, J. Balmforth & Co. purchased the peanuts, and stored them in their warehouse in Louisville, Ky. The warehouse of Balmforth & Co. was destroyed by fire in January, 1889, by which the goods of the defendants, and other goods stored in said warehouse, were consumed. The plaintiff testified in his own behalf, further, that in accordance with said agreement the said peanuts of defendants were insured in several companies, "the policies being taken out in the name of J. Balmforth & Co., and covering the goods stored in their warehouses, their own, or held in trust or on commission." After the fire the insurance companies resisted the payments due on the policies, and hence it became necessary to institute legal proceedings for the collection of the same. The plaintiff presented an itemized statement of the expenses incurred in prosecuting these several suits for the recovery of the insurance. It was further shown that there was recovered from the insurance companies, after a lengthy litigation of three years, practically the full amount of the insurance—$90,000. The plaintiff's itemized state-

ment of the expenses shows that in the collection of this amount of insurance he had incurred different expenses aggregating something over $25,000. Sixteen thousand dollars of this amount was alleged to have been paid to four separate firms of lawyers, and the remaining amount covered various items of expenses as shown by said statement. It was shown by other testimony introduced that Roberts & Goodloe, one of the firms of lawyers to whom the plaintiff alleges in his statement of expense to have paid $4,000, were employed by the executors of J. Balmforth to look after the interest of the deceased's estate. It was also further shown that one of the items of expense in the statement rendered by the plaintiff was for the rent of the office for him during the pendency of the litigation, and other items were for continuous payment to witnesses and of special bailiffs for the service of papers, and others were for various charges in said statement, which it is unnecessary to particularize. It was not shown that plaintiff, as surviving partner of J. Balmforth & Co., had any communication with the defendants relating to the institution of the suits against the insurance companies, or in reference to the expenses incident to such litigation, or that he had at any time consulted with them in reference thereto.

The question asked the plaintiff as a witness, as to the general custom among warehousemen in the city of Louisville, at the time of the contract, in reference to the insurance of goods in the warehouses, the answer and rulings thereupon, and the charge given by the court in reference thereto, are sufficiently stated in the opinion.

The defendants requested in writing the following written charges, and separately excepted to the court's refusal to give each of them as asked: (1) "If the jury believe from the evidence the $1,000.00 which had been deposited by defendants with J. Balmforth & Co., and the value of the peanuts on the 8th day of January, 1886, was equal to the amount of the indebtedness of defendants to plaintiffs up to said date, then they must find for the defendants." (2) "Under the contract given in evidence in this case, Balmforth & Co. agreed to insure the peanuts, and defendants are not liable to refund or pay the plaintiff any portion of the costs and attorney's fees incurred in the collection of such policies." (3) "Under the contract given in evidence in this case Balmforth & Co. became the insurers of the peanuts in question, and are liable to defendants for the value of such peanuts at the time of the destruction of the same by fire; and if the value of such peanuts at the time of the fire, together with

[Buyck.& Cain v. Schwing, Surviving Partner.]

the $1,000.00 which plaintiff admits was paid by Buyck & Cain before the fire, equals or excels the amount due on that day by Buyck & Cain to said Balmforth & Co., then the jury can not find any verdict for plaintiff." (4) "Under the evidence in this case, defendants are not liable to account to plaintiff for any part of the money paid out by him in the costs and expenses incurred in collecting the insurance money." (5) "If the jury believe the evidence in this case, nothing can be deducted from the amount of insurance money which defendants are entitled to have credited on their accounts because of the bill of expenses, netting $9,487.59." (6) "If the jury believe from the evidence that the executors of the estate of Balmforth employed the law firm of Roberts & Goodloe to assist the lawyers employed by the plaintiff to prosecute the suits against the insurance companies, then defendants can not be charged with any portion of the fees paid such lawyers." (7) "Under the evidence in this case defendants can not be charged with any portion of the money paid out by plaintiff to witnesses, nor for any portion of the same alleged to have been paid to experts." (8) "Under the evidence in this case, defendants can not be charged with any portion of the money claimed to have been paid out by plaintiff for office rent." (9.) "Under the evidence in this case, defendants can not be charged with any portion of the money claimed to have been paid out by plaintiff for special bailiffs." (10) "Under the evidence in this case, defendants can not be charged with any portion of the amount claimed to have been paid out by plaintiff for copies of testimony." (11) "Under the evidence in this case, defendants can not be charged with any portion of the money claimed to have been paid out by plaintiff in payment of clerk's and sheriff's bills." (12) "Under the evidence in this case, defendants can not be charged with any portion of the bill of expenses, netting $9,487.59, introduced in evidence." (15) "It was the duty of the plaintiff to collect the fees of his witnesses from the insurance companies which he had sued, unless they were insolvent; and, if he failed to do so because of his failure to have them taxed, then he can not charge the defendants with any portion of the amount paid."

TOMPKINS & TROY, and J. M. FALKNER, for appellants.

BRICKELL, SEMPLE & GUNTER, for appellee.

[Buyck & Cain v. Schwing, Surviving Partner.]

STONE, C. J.—Schwing, as a witness, was asked by his own counsel: "What was the general custom among warehousemen in the city of Louisville, Ky., at the time the contract was made with the defendants, as to the insuring goods stored in such warehouses?" He answered that "it was the general custom of warehousemen in the city of Louisville, Ky., at that time, to keep the property of their customers insured in open policies taken out in the name of the warehousemen, which covered the property they owned, or held in trust, and to charge the customer for such insurance at the rate of one-eighth of one per cent. per month on the value of his property covered by the policies." There was an objection to the question and also to the answer, each of which was overruled, and the defendants excepted separately to each ruling. This was the entire testimony of such custom.

The court, at the instance of plaintiff, Schwing, charged the jury, "That if there was any general custom in reference to the mode of conducting the business of insurance by commission merchants of customers in Louisville at the time of the contract in this case, the terms of the contract are to be interpreted in the light of such custom, and the parties are presumed to contract in reference to such known usage and custom, unless the terms of the contract are inconsistent therewith." There was an exception to this charge.

In *Barlow v. Lambert*, 28 Ala. 704, we defined the rule in reference to custom as an element of a contract, and declared the function or office it will be permitted to perform. It is only evidence of fact, not of law, in cases where the contract is expressed in language of ambiguous or of doubtful meaning, or is silent upon some material inquiry of fact. To establish such custom, and make it operative in any given case, it must be reasonable, not against the law or public policy, not opposed to any express term of the contract, and must be so general and so known, as to justify the presumption the parties knew of it, and contracted in reference to it.—*Desha v. Holland*, 12 Ala. 513 ; *Smith v. Rice*, 56 Ala. 417 ; *M. & M. Ry. Co. v. Jay*, 61 Ala. 247; *Antomarchi v. Russell*, 63 Ala. 356 ; *Powell v. Thompson*, 8 Ala. 51; *Haas v. Hudmon*, 83 Ala. 174; *Sherman v. Skaggs*, 73 Ala. 446 ; *E. T. Va. & Ga. R. R. Co. v. Johnston*, 75 Ala. 596; *Wilkinson v. Williamson*, 76 Ala. 163. In *German Amer. Ins. Co. v. Com. Fire Ins. Co.*, 95 Ala. 469, we declared it to be "well settled that proof of such local usages will not raise up a presumption of a knowledge of their existence on

the part of one engaged generally in the business to which they pertain in a certain city, at least where the domicile of the party sought to be charged is elsewhere; or in other words, in order to create even a *prima facie* presumption that a party has knowledge of a usage incident to a particular business about which he is engaged, the usage must be shown to be a general one in that business, in such sort as that it would be unreasonable to suppose he was ignorant of it."

The record before us contains no direct testimony of the residence of Buyck & Cain when the acts were done which gave rise to this suit. It was agreed on the trial that the terms of the contract under which the goods were purchased, were correctly set forth in a letter of authority and instructions written by Buyck to Cain, his co-defendant. The letter was dated Wetumpka, Ala., and was addressed to Cain at Louisville, Ky. The warehouse in which the goods were stored, and in which they were burned was the property of Schwing and his partner, and was in Louisville, Ky. The present suit was brought in Montgomery county, Alabama, and process was served on Cain in that county, while Buyck was brought in by branch summons executed in Elmore county, Ala., the county in which Wetumpka is situated. The inference these facts would justify would be that Balmforth & Co.—the partnership of which Schwing is the surviving partner—resided or did business in Louisville, Kentucky, that Buyck & Cain resided in Alabama, and that when the order was given to make the purchase, Cain was in Louisville, Kentucky.

We hold the City Court erred in giving the charge copied above. It ignores all inquiry as to the length of time such custom had prevailed, and of defendants' knowledge, or opportunity for acquiring knowledge, of its existence.

If it be found, upon proper evidence and a proper charge, that such custom did exist, and that the defendants in the City Court—appellants here—are chargeable with notice of such custom then it would not necessarily follow as matter of law, that they are responsible for any part of the expense of enforcing the liability of the insurance companies for the loss. They are responsible, and should be so held, for their proportion of the expense so incurred, so far, and only so far, as the same was, or appeared to be reasonably necessary and proper. There was no attempt made, so far as the record informs us, to obtain the authority or sanction of Buyck & Cain that any extraordinary expenditure should be incurred in prosecuting the suits against the insurance com-

[Buyck & Cain v. Schwing, Surviving Partner.]

panies. The circumstances indicate that correspondence with them would not have been difficult. The itemized account of expenses certainly shows charges that are unusual, alike in their nature, frequency and amounts. Why it should be necessary to retain witnesses on continuous pay, when they had not been subpœnæd, and why incur many other items of expenditure, we are not able, by the aid of anything shown in the transcript, to perceive. Witnesses appear to have been paid monthly, and generally weekly, for about three and a half years. There is only one month, September, 1888, in which no charges of this kind appear. The gross sum claimed to have been so paid, appears to have reached between six and eight thousand dollars—of which, it would seem—probably not one thousand dollars were recovered back in taxed costs, although all the suits that were tried were gained against the insurance companies; while the others were compromised, Schwing realizing nearly all he claimed. Nor can we perceive why it should be necessary for Mr. Schwing to have an office, in connection with the prosecution of the suits against the insurance companies. If the authority or sanction of Buyck & Cain was not obtained for incurring these extraordinary expenses, they are not proper charges in the account sued on in this case, so far as we are informed by the record; and it states it contains all the evidence.

Under these principles we hold that charges 1 to 5 inclusive, and charge 7, asked by defendants, were, each of them, properly refused. Charges 6 and 8 ought to have been given. Charges 9, 10 and 11 were properly refused, for we cannot, on the evidence found in the record, assert as matter of law that those expenditures were not reasonably necessary, and therefore proper. Charge 12 was properly refused. We cannot assert, as matter of law, that all of those items of expense were improper. We have sufficiently indicated our view on this subject; and the same may be said of charge 15. Charges 13, 14, 16 and 17 are in their nature arguments and were properly refused on that account, without considering any other.

Reversed and remanded.