ARCHIBALD CARR, Respondent, *v.* HIBERNIA INSURANCE COMPANY, of Ohio, Appellant.

June 19, 1876.

1. Property insured was described as being in a two-story brick building, No. 1444 Broadway. The front part of the building was two stories high, and the rear one story only. The property was partly in the front and partly in the rear part of the building. A fire originated and destroyed the property in the rear. *Held,* that there was no misdescription of the *situs* of the property.

2. The insurance policy issued by defendant contained a provision that the policy should be void if the assured had any other insurance, and did not notify defendant thereof, and have the fact indorsed on the policy. The assured had other insurance, no such indorsement being made, but the defendant's agent knew of the fact, conferred with the agent of the other insurer, before the issue of the policy, as to the proportions of risk each

should take; the risk was divided, and the policies made out according to the result of the conference. *Held*, that the defendant was estopped to object to the want of a formal notice and indorsement.

3. A verdict for damages which is demonstrably excessive will be set aside.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

*Fisher & Rowell*, for appellant, cited: Todd *v.* Germania Ins. Co.; Lubenstein *v.* Ætna Ins. Co., 45 Ill. 303; Moadinger *v.* Mechanics' Ins. Co., 2 Hall, 490; Tesson *v.* Atlantic Ins. Co., 40 Mo. 33; Hutchinson *v.* Western Ins. Co., 21 Mo. 97; Deitz *v.* Mound City Ins. Co., 38 Mo. 93; Barrett *v.* Union Ins. Co., 7 Cush. 175; Lee *v.* Howard Ins. Co., 3 Gray, 583.

*E. W. Pattison*, for respondent, cited: Hayward *v.* National Ins. Co., 52 Mo. 181; Pelkington *v.* National Ins. Co., 55 Mo. 172; Russell *v.* State Ins. Co., 55 Mo. 585.

GANTT, P. J., delivered the opinion of the court.

Carr sued the defendant to the April term, 1874, of the St. Louis Circuit Court, alleging the issue, on June 26, 1873, of a policy insuring plaintiff against loss by fire to the amount of $300 on ovens; $300 on stock of flour, butter, and materials for making bread; $400 on tools, fixtures, counter, shelving, and show-cases; the same being contained in a two-story brick bakery known as 1444 Broadway, in the city of St. Louis, Missouri. The petition proceeded to declare that "all of the property above mentioned and described" was destroyed by fire on November 20, 1873, and that due proof of loss was made, etc.

The answer denied that it insured against loss by fire the property in the petition described. It admitted the execution of the policy, but alleged that it was void because the plaintiff did not have the property in the petition mentioned at the place described therein. It denied that said property was destroyed, denied its value, denied notice of loss, and denied the performance by the plaintiff of "all the conditions of said policy on his part to

be kept and performed.'' The answer then alleged that it was one of the conditions of the policy that, if the assured had any other insurance on the property, not notified to the defendant and mentioned in, and indorsed on, the policy, then the policy should be void; that plaintiff did have other insurance whereof defendant was not notified, and the same was not indorsed on the policy, or mentioned therein; wherefore, etc.

Also, that it was provided in and by said policy that, if the plaintiff should thereafter make any further insurance, he would with all diligence give notice thereof to defendant; that plaintiff did afterwards effect other insurance, and did not notify defendant, etc.

The reply admitted that, when the policy was effected, there was other insurance, but alleged that defendant was thereof fully notified at the time; and denied any subsequent insurance.

There was a trial in March, 1875, and a verdict was given for plaintiff, in the sum of $650, which the court refused to set aside. By the bill of exceptions it appeared that, in June, 1873, the plaintiff, at the request of one LeBaum, who was soliciting insurance for the defendant, agreed to divide with defendant and the company of which a Mr. Morrison was agent the amount of his insurance. He caused LeBaum to confer with Morrison. Negotiations had been already pending between plaintiff and Morrison for the whole of plaintiff's insurance, which was $2,500. It was arranged between Morrison and LeBaum that Morrison's company should issue a policy for $1,500, and defendant for $1,000. This agreement was executed. Plaintiff received his policy from LeBaum, and paid him the premium, for which LeBaum duly accounted with the general agent of defendant, whose name was Hickey. No other policy was taken out by plaintiff except these two. Objections were saved to the proof, by the statements of LeBaum, of the terms on which he was employed by Hickey. The

Circuit Court very properly admitted this proof. In like manner evidence was properly admitted of what passed between LeBaum and plaintiff, of the full knowledge had by LeBaum of the dealing of plaintiff with Morrison, and of what was said by Hickey respecting the proof of loss after the fire. It was shown that the property destroyed was in the back part of No. 1444 Broadway. The front of the building was two stories high; the back part, where the store-room and bakery were, was one story. All these parts constituted one building; there was no open space between the parts, only glass doors.

The evidence of the extent of the loss was furnished by the testimony given by Carr at the trial, and by the statements of loss which he made out soon after the fire. At the trial he said, "I think the total loss of all my fixtures and stock amounted to between twenty-five and twenty-seven hundred dollars." On cross-examination he said, "I think my proof of loss was made out stating my loss to be a little over six hundred dollars." "I say now it was between twenty-five and twenty-seven hundred dollars, *because, in making up proof of loss, discount was allowed.* It was a total loss to me. I claimed more than six hundred dollars in my proof of loss. I would know the proof of loss. I swore to it. I made the schedule of the loss attached to it." The paper being shown to him, he remarked that the loss he claimed was something more than $600; was to be divided between the two companies, and the proportion charged against the defendant was $352.25. In the schedule, he claimed against the defendant $25 on account of damage to the oven. He persisted at the trial in saying that what he had sworn to in making proof of his loss, soon after the fire, was true; and that the loss of his ovens, his flour and materials—except about three sacks of flour—his fixtures and furniture in his back shop, was total; and that it amounted to between $2,500 and $2,700.

The policy set forth that the defendant, in consideration

of $20, insured plaintiff against loss by fire to the extent of $300 on his ovens; $300 on his stock of flour, butter, and other materials for making bread; and $400 on his tools, fixtures, shelving, show-case, etc.; all contained in a two-story brick bakery known as No. 1444 Broadway, for the term of one year from June 26, 1873; with a proviso that, if the assured had already another insurance upon the property, not notified to this underwriter, this policy should be void, or, if he should effect any future insurance thereon, and fail to notify the underwriter thereof with all reasonable dilligence, this policy should be void; and in case of any other insurance, prior or subsequent, the assured should be entitled to recover of this underwriter no greater proportion of the whole loss or damage sustained than the amount hereby insured should bear to the whole amount insured upon said property.

The policy issued by the National Insurance Company, apparently upon the same property, was for $1,500 in all; $500 on the ovens; $500 on the flour, butter, etc.; and $500 on the furniture, shelving, and show-cases.

The case was given to the jury under the following instructions, asked for by the plaintiff:

" If the jury find for the plaintiff, they will assess the damages at such sum as will indemnify him for the loss sustained on the property insured, not exceeding one thousand dollars; and, if they further find that payment has been vexatiously delayed by the defendant, they may assess a sum as additional damages, not exceeding ten per cent. on the amount of the loss.

" If the jury believe that the agent of defendant knew, at the time of the application of plaintiff for insurance, that plaintiff had already taken out insurance on the same property in another company, or was then taking out such other insurance, and with such knowledge delivered the policy to plaintiff, defendant cannot now set up such other insurance as a defense to the policy."

Of its own motion the court gave the following instruction :

" The court instructs the jury that, before the plaintiff can recover in this case, he must show that he gave defendant, or its duly authorized agent, notice of the existence of the other insurance upon the property in question, in the National Insurance Company, of Philadelphia, or that defendant, by itself or agents, received such notice. Such notice, however, need not have been formal, and the requirement of notice would have been satisfied by the existence of a state of facts which brought to the knowledge of the agent of defendant the fact of the prior insurance, if the jury find that such facts have been established by the evidence."

To the giving of these instructions defendant excepted.

The defendant asked several instructions on the subject of the effect of other insurances not disclosed to the defendant, or not formally entered upon the policy held by plaintiff. These the court refused, defendant excepting. The defendants also asked several instructions—how many, we are not told—which the court gave, but these are not shown by the bill of exceptions. Obviously, we should be unable to criticise the propriety of refusing the instructions which the court declined to give, even if each one of them declared an undeniable proposition of law applicable to the facts of the cause ; for it would still be consistent with all that we can know that the instructions given embodied the same rules of law in better, or equally good, phraseology. Every presumption is in favor of the correctness of the action of the Circuit Court, and the party who alleges error must show it affirmatively.

The other points relied on for a reversal of the judgment are :

1. That the court did not properly construe the policy in refusing to rule that the property insured and damaged was not in a " two-story brick bakery."

2. That the court erred as to the necessary notice to be given of other insurance upon the same property.

3. That the damages were excessive, and were assessed by the jury, under the instructions of the court, without regard to the other insurance on it.

· 1. The appellant's counsel earnestly insist that the policy had reference to no property in the rear or back part of the building No. 1444 Broadway, because—the property being described as in a two-story brick building, and that part of the building containing the property being of one story only—there was a plain and material variance between the thing insured and the thing destroyed. We cannot accept this criticism. It is the familiar custom to describe a building as of one story, two stories, three stories, etc., according to the height of the front or principal portion of it. Ninety-nine times in the hundred, the height of the front is greater than that of the rear of all but those buildings of modern construction which are exclusively devoted to business. In nearly every dwelling, in this or any other American city, there are parts the height of which is materially less than that of the principal mansion. Sometimes, while the number of stories is the same, the height of each story is less. Sometimes, and usually, the number is lessened, as well as the height of each one of the number. Yet no one supposes that such a building, which in front may have four stories and in the rear only two, is improperly described as a four-story house, and as little can it be doubted that it is *all one house*. We think the plaintiff's bakery was properly described as being a " two-story brick bakery," and we should be of this opinion even if the rear part, the height of which was one-story only, had been composed of wood in greater proportion than the front part, which, however, does not seem to have been the case. If, indeed, any deception had been practiced on the defendant in respect of the nature or material of the building containing the insured

property, a very different question would have been presented. But we have nothing to do with hypothetical cases.

The case to which we are referred in 45 Ill. 301, 303, 305, so far from sustaining the views contended for by appellant's counsel, are liable to be quoted in opposition to them. There the court held that a policy not materially different from that shown by this record covered, not only property in the building described, but in a separate building used in connection with, but not actually contiguous to, the first. Here all the property was absolutely and emphatically in the *same* building. It was so described in the policy, so described in the petition, and so proved by the witnesses. The case of *Todd* v. *Germania Insurance Company*, decided by us at this term, is cited by appellant as authority for holding the petition and evidence to be fatally inconsistent. If counsel will read the opinion in that case, they will discover its inapplicability to the present. There is no possible doubt as to the proposition that property described and insured as being in one house, if removed to another house, and there destroyed by the peril insured against, is in fact uninsured. But, if it be insured as being in premises called A, and if it be demonstrated that is was really there when destroyed, we cannot see what advantage is gained to the underwriter by the establishment of the proposition that, if the property insured as being in one place is actually in a different place when destroyed, the insurance will be vitiated.

2. The instructions given by the Circuit Court, in relation to the requirement of notice to the defendant of existing or subsequent insurances, were in perfect harmony with the later rulings of the Supreme Court of the State of Missouri, the Supreme Court of the United States, and of many other tribunals of the highest authority. We have no occasion, of course, to look beyond the rule laid down by the Supreme Court of Missouri. *Pelkington* v. *National Ins. Co.*, 55 Mo. 172 ; *Russell* v. *State Ins. Co.*, Ib. 585 ; *Hayward* v. *National Ins. Co.*, 52 Mo. 181 ; *Horwitz* v. *Equit-*

*able Mutual Ins. Co.*, 40 Mo. 557 ; " The Distilled Spirits,"
11 Wall. 356. The case of *Hutchinson* v. *Western Insur-*
*ance Company*, 21 Mo. 97, cited by appellant, has been
repeatedly and pointedly overruled.    See 52 Mo. 195.
We do not deem it necessary or becoming in us to go
over ground so lately illustrated by our own Supreme
Court, and we content ourselves with saying that the
views thus expressed are not only binding on us as an
authoritative exposition, but that, independent of this
sanction, they command the full concurrence of our reason.

3. There is more difficulty as to the amount of the
damages assessed by the jury, and the rule by which they
were led to make that assessment.    Certainly, anything
more incongruous than the statements made by the plaintiff
in November and December, 1873, and in March, 1875, on
the subject of the loss he had sustained by the fire, is
seldom witnessed.    He made two statements of his loss ;
the first was made on November 24th, the second on Decem-
ber 20, 1873 ; the fire having occurred on November 20th.
In his first statement he alleged that the total value of the
property insured was $3,000, and that the damage by the
fire, of which he furnished a bill of particulars, was $616.25,
of which he claimed $311.11 from the defendant.    In the
second statement—which is called " additional proofs of
loss," not " proofs of additional loss"—he sets down the
total loss at $705.40, of which he claimed $352.55 from
defendant.    It appears that he settled with the National
Insurance Company, of Philadelphia, for $315.    It will be
remembered that he was insured in the sum of $1,500 in
that company, and the sum of $1,000 in defendant's.    Of
course, if his whole loss was $705.40, of which he received
from the National Insurance Company $315, the remainder
only (leaving out of view all questions of accuracy of the
apportionment of the loss between the two companies),
or $390.40, was recoverable from defendant.    If the appor-
tionment had been made of this loss between the two

companies according to the terms of defendant's policy, it would appear that the defendant was bound to pay of every $5 lost $2, and the National Insurance Company $3. This would make $423.24 of the last amount proved up, which was $705.40, payable by the National Insurance Company, and $282.16 payable by the defendant. But, dividing the loss between them ever so arbitrarily, we are unable to see how defendant could, under the evidence, have been charged with more than $390.40 of principal money. No legal rate of interest, and no legal penalties, could have swelled this sum to $650 on March 9, 1875. Yet this was the verdict given by the jury on that day, and the court permitted it to stand, notwithstanding the suggestion that the damages were excessive. Was there anything in the instructions of the court that might have led the jury to give this excessive sum? We think there was. They were told that, " if they found for the plaintiff, they must assess the damages at such sum as would indemnify him for the loss sustained on the property insured, not exceeding one thousand dollars," etc.

No reference is here made to the insurance, or the money paid, by the National Insurance Company. The court had evidence before it that plaintiff had received $315 from that company on account of this loss, and, when the learned judge spoke of the indemnity which plaintiff was to recover, he should have reminded them of this partial satisfaction. If the property lost was insured in both companies, we find it difficult to understand how the defendant could, under its agreement with plaintiff, be liable for so much as half the loss. But, at lowest, it was only liable for so much of the loss as remained unpaid by the other underwriter. If the plaintiff collects the whole of this judgment, he will have treated his two underwriters very differently. We cannot see a justification for a discrimination so marked. Because the damages are excessive, and because the instruction of the court was calculated to lead the

jury into the error they seem to have committed, the judgment is reversed and the cause remanded, the other judges concurring.

If respondent will remit all of this judgment except $282.18, and interest from February 20, 1874, and pay the costs of this appeal, the judgment will be affirmed.

[NOTE.—The respondent remitted the sum suggested.]