[German-American Ins. Co. v. Commercial Fire Ins. Co.]

# German-American Insurance Co. v. Commercial Fire Ins. Co.

### Action on Re-insurance Compact.

1. *Re-insurance compact; whether building or risk is one or several.* Under a contract or compact of re-insurance, between an Alabama insurance company and a New York company, by which the former agreed to assume a certain portion of the risks taken by the latter, on due notice, and within a limit of $5,000 on any one building or risk; *held*, that a block of stores in New York city, under the same management, and filled with the same kind of goods, was to be regarded as one building and one risk, although two partition walls divided it into three stores, and each with its contents was covered by a different policy, the evidence also showing that the stores on each floor were connected by openings in the partition walls, through which persons passed and goods were moved, though they were generally closed with iron doors.

2. *Same; custom in New York as to character of building or risk.*—A custom existing in New York city, among persons engaged in the insurance business, by which a block of stores under the same management, all filled with the same kind of goods, is regarded as three separate buildings or risks, because separated by two partition walls, with the openings through them fastened by iron doors, which are kept fastened except when opened for the passage of persons or goods, is not binding on an Alabama insurance company, under its compact of re-insurance for a New York company, unless it is chargeable with notice, actual or constructive, of the existence of such custom; and an implication or presumption of notice does not arise from the generality of the custom in New York city, when it is shown that the New York com. any took risks in several other cities and States, all of which were equally covered by the re-insurance compact.

3. *Same; ratification of risk outside of compact.*—The re-insuring company, the defendant, can not be charged with acquiescence in a risk outside of the compact, or ratification of it, because it failed to object after notice, unless it was notified of all the facts showing that the risk was outside of the compact; and the *onus* is on the plaintiff company to prove that it gave full notice of the facts, as required by its fiduciary position.

4. *Waiver of defense to claim.*—If the defendant company, when first notified of the loss, claimed exemption from liability on a ground depending on the legal construction of the contract, this does not amount to a waiver of a defense afterwards developed by facts not then known, and of which plaintiff ought to have given notice.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This action was brought by the German-American Insurance Company, a New York corporation, against the Com-

mercial Fire Insurance Company, an Alabama corporation located in Montgomery, and was founded on a contract, called a "re-insurance compact," by which the defendant agreed and undertook to assume a certain portion of the risks taken by the plaintiff, on the terms therein specified. A jury was waived, and the cause submitted to the decision of the court, under a demand for a special finding of the facts. On the facts found by the court, and stated in the judgment, the court decided that the defendant had paid the full amount for which it was liable, and therefore rendered judgment for it. The plaintiff excepted to this judgment, and here assigns it as error.

WATTS & SON, for appellant, contended (1) that Rossiter's stores were three separate buildings and risks, both on the facts shown by the evidence, and under the custom shown to exist in New York; and (2) that the defendant was bound by that custom. They cited Wood on Insurance, 433; 3 Add. Contracts, 129; *Watts v. Bailey*, 49 N. Y. 464; *Mooney v. Howard Ins. Co.*, 138 Mass. 375; *Astor v. Union Insurance Co.*, 7 Cow. 202; *Enos v. Sun Insurance Co.*, 67 Cal. 621; *Standard Oil Co. v. Triumph Insurance Co.*, 64 N. Y. 485; *Hancock v. Fishing Ins. Co.*, 3 Sum. 132; *Robinson v. United States*, 13 Wall. 363; 3 Cliff. 318; 4 *Ib.* 200; 4 Fed. Rep. 143; *Livingston v. Maryland Ins. Co.*, 7 Cranch, 506; *Barnard v. Kellogg*, 10 Wall. 383; *Newhall v. Appleton*, 114 New York, 140; 4 Comst. N. Y. 326; 14 Barb. 383; 12 Cush. 416; *Rennick v. Bank*, 11 Wheat. 581; *Columbian Ins. Co. v. Catlett*, 12 Wheat. 383; *Insurance Co. v. McMillan*, 27 Ala. 77; *Fire Ins. Co. v. Updegraff*, 43 Penn. St. 35; 80 N. Y. 108.

TOMPKINS & TROY, *contra*, cited *Queen Mutual Ins. Co. v. Ocean Ins. Co.*, 107 U. S. 485; *Morgan v. Hardy*, 16 Neb. 427; *Carr v. Hibernia Ins. Co.*, 2 Mo. App. 466; *Sampson v. Security Ins. Co.*, 133 Mass. 49; *Cargill v. Mutual Insurance Co.*, 33 Minn. 90; *Blake v. Ex. Mutual Ins. Co.*, 12 Gray, 265; *Fair v. Manhattan Ins. Co.*, 112 Mass. 320; *Hockstadter v. State*, 73 Ala. 24; *Eager v. Atlas Ins. Co.*, 25 Amer. Dec. 363; 59 *Ib.* 186; *Railroad Co. v. Kolb*, 75 Ala. 396; *Wilkinson v. Williamson*, 76 Ala. 103; *Smith v. Rice*, 56 Ala. 417; *Herring v. Skaggs*, 73 Ala. 417; *Higgins v. Moore*, 34 N. Y. 417; *Walls v. Bailey*, 49 N. Y. 495; *Fuller v. Robinson*, 86 N. Y. 396; *Bradley v. Wheeler*, 44 N. Y. 495; *Paine v. Howells*, 90 N. Y. 660.

McCLELLAN, J.—This is an action by the German-American Insurance Company against the Commercial Fire

Insurance Company, on a contract by which, it is alleged, the defendant re-insured certain risks taken by plaintiff on property in New York City. The property was destroyed by fire, the loss paid by plaintiff, and reimbursement to the *pro-rata* extent of re-insurance is now sought to be enforced from defendant. Trial below was had by agreement without jury, the issues of fact were found for defendant, and judgment went accordingly. This appeal presents for review the conclusions of the city judge on the evidence, and the judgment rendered.

There is no material controversy as to what the facts are. The contracts of re-insurance sued on were made in this way: The Commercial Fire Insurance Company, on May 26, 1887, signed, and mailed to the German-American Insurance Company what is known as a "re-insurance compact," which was duly received and acknowledged by the latter. This compact, with its attached lists and schedules, authorized the German-American company to re-insure itself in the Commercial company, within certain limitations as to classes and amounts of risks, by entries thereon or therein, followed by certain *ad interim* and final reports to the re-insuring company, setting forth the term, amount and class of risk, rate of premium, and location of property insured. Among other risks which the compact, as modified by subsequent correspondence, authorized the German-American company to re-insure in, or "cede" to the Commercial company, were "non-fibre" goods in brick stores or warehouses, in amounts not to exceed five thousand dollars in any one building or risk. Claiming to proceed under this authorization, and within its limitations, the German-American company made and reported entries on the compact aggregating twelve thousand five hundred dollars, on non-fibre goods stored in "Rossiter's Stores," Nos. 1, 2 and 3 severally. The first entry and report was of $2,000 of re-insurance on goods in "Rossiter's Store No. 2, foot W. 60th St., N. Y. City;" the next of $3,000, on goods in "Rossiter's Store No. 1, N. Y. City;" third, of $2,000, on goods in "Rossiter's Store No. 1, N. Y. City;" fourth, of $3,000, on goods in "Rossiter's Store No. 2, N. Y. City;" and last of $2,500, on goods in "Rossiter's Store No. 3, N. Y. City." Previous to these entries and reports, plaintiff, for the purpose of inducing defendant to increase its maximum limit on amount of re-insurance on storage stores, had sent the latter a schedule showing the amounts of net risks it carried on a number of such stores in New York City and elsewhere, and among the other items in this

list is the following, "Rossiter's Stores, ft. 60th St., N. Y. City, $30,000."

On proof of loss, defendant paid plaintiff about $5,000. and refused to pay the balance claimed under the re-insurance contracts, amounting to something over $6,000. on the ground that, as it insisted, "Rossiter's Stores" Nos. 1, 2 and 3 constituted but one building or risk within the meaning of the said re-insurance compact, and, of consequence, plaintiff was without authority to bind defendant beyond the maximum limit of $5,000 on goods stored in said stores, and its entries and reports as to and of all re-insurance in excess of this limitation were abortive and invalid.

It can not be doubted on the evidence found in this record, consisting of minute descriptions and diagrams of Rossiter's stores Nos. 1, 2 and 3, that they, in the ordinary sense of the term, constituted one building. It appears that the building was five stories in height; that the outer wall was common to each of the stores; that the several floors were respectively on the same level; that while two partition walls divided the building into three rooms, or compartments, on each floor, there were doors about eight feet square in each of these walls between the several compartments, in each of the five stories; that the whole structure was under one management, and devoted to the same uses, the storage of non-fibrous merchandise; and that the partition doors were used for the purposes of the passage of persons and the removal of goods from one store to another or others on each floor. It was also shown that double iron shutters were provided for closing these apertures in the partition walls; that these were generally closed, and that the partition walls extended five feet above the roof. It is not seriously, and can not be successfully contended, that, upon this showing, the three stores in question were distinct buildings, or that they did not constitute one and the same building, as that word is commonly understood.—*Fair v. Manhattan Ins. Co. et al,,* 112 Mass. 320; *Blake v. Exchange Mutual Ins. Co.,* 12 Gray, 265; *Cortill v. Millers' & Manufacturers' Mutual Ins. Co.,* 33 Minn. 90; *Sampson v. Security Ins. Co.,* 133 Mass. 49; *Carr v. Hibernia Ins. Co.,* 2 Mo. App. 466; *Hochstadter v. State,* 73 Ala. 24.

It is equally manifest, we think, that these stores, or the goods stored therein, constituted but one risk in the sense of the compact under consideration, unless the word is to take on a different significance from the usage and custom proved in this case, and to be presently considered. It is most clear from the record before us that the Commercial

company conceived it to be of the utmost importance to it that its exposure to loss under the re-insurance compact should in no case exceed $5,000. When the German-American company advised and requested it to raise its maximum list from $2,500 to $7,500 or $10,000 on non-fibre storage, it replied, "We think that the line suggested by you is rather too large for us ; we have, however, concluded to authorize an increase on the 'non-fibre' stores to $5,000, that on 'fibre' to remain $2,500 as heretofore." And the purpose of the company evidently was to guard against the possibility, or probability in case of any loss, of losing in any one fire more than it could afford to lose, having in view its relatively small capitalization and assets. The means adopted to effectuate this purpose was the stipulation of the compact against being bound beyond a stated sum on any one building or risk. How this means could accomplish the end to which it was addressed, if the stipulation be construed so as to admit of re-insurance to three times the minimum limit upon the mere circumstance that there are three rooms, stores or compartments in the building proposed to be insured, while the probable consequence of a fire in any one of these stores would be the destruction of the contents of all three of them, and where the risks arising from possibility of misconduct on the part of the insured would, of course, be equally incident to the goods in all and each one of the stores, it is difficult to perceive. With the probability that a fire starting in either of the stores would consume the contents of the others, and the certainty that incendiarism by the owner for the purpose of collecting insurance money—a risk which must be reckoned in all fire insurance—would go to the destruction of all the property kept by him in the building, there is every reason for the conclusion that the Commercial Fire Insurance Company intended the limitation to $5,000 to obtain with respect to property stored in different compartments, rooms or stores in the same building, as in the case at bar. And we accordingly hold, that plaintiff was without authority to re-insure itself in the defendant corporation, on merchandise stored in "Rositer's Stores," in any sum beyond $5,000, if the re-insurance compact is to be interpreted according to the ordinary significance of the term "building or risk"

It is proved in this case, however, that according to an established and universal usage or custom of the business of insurance *in the city of New York*, each one of "Rossiter's Stores," numbered 1, 2 and 3, was a distinct building for all the purposes of insurance, and that risks taken upon goods

in them severally are distinct and separate risks.  So that, if this usage is to obtain in respect of the compact of re-insurance involved here, as claimed for plaintiff, the several contracts of re-insurance entered and reported to the defendant, being each within the latter's maximum list when measured separately as to each store, are within the limitation of $5,000 stipulated for, and therefore valid and binding on the Commercial company.  While it is well settled at this day, that the existence of an usage in respect of the subject-matter of a contract may have the effect of giving to its terms definitions which would not otherwise attach to them, the doctrine rests, except in particular instances, solely upon the theory, that the parties in entering into the compact had such usage in mind, stipulated with reference to it, and, hence, made it a part of their contract; and whether an usage, in a given case, is thus to be taken as a part of the contract, whether the parties had it in view in their negotiations, and intended that their agreement should be read and construed with reference to and in the light of such usage, is always a question of fact.  And as, in the nature of things, no man can be said to have contracted with reference to a fact—to have had a fact in mind—of which he was ignorant, usage relied on by one party to give color to the obligations of another, or to impose a liability which does not arise on the ordinary meaning of the terms of their contract, must be shown to have been known to such other party.  This is usually done by proof of an established usage, certain, uniform and reasonable in character, and of such general acceptance, and consequent notoriety, as that *prima facie* presumption of knowledge of it on the part of him who is sought to be affected by it arises, and, unrebutted, affords the predicate for the further presumption, of a conclusive nature, that he considered it in the particular dealing to which it is incident, and made it as much a part of his contract as if it had therein been specifically referred to.

In the case at bar, the *onus* was on plaintiff to prove, not only that the usage relied on had been established and existed at the time of the contract, but also that the defendant had knowledge of it, and therefore is to be holden to have contracted with reference to it.  There is no direct evidence of such knowledge.  The inference of knowledge is sought to be rested alone on proof of the establishment, existence and prevalence of the usage in the city of New York.  Had both contracting parties been *domiciled* in that city, and entered into a re-insurance compact solely with reference to

[German-American Ins. Co. v. Commercial Fire Ins. Co.]

risks located there, there would be some ground to say that defendant would be held *prima facie* to a knowledge of the usage. But the domicile of defendant was in Alabama, and the re-insurance compact contemplated and provided for the taking of risks not only in the city of New York, but throughout the country. Not only so, but the correspondence between the parties demonstrates that risks were actually incurred under the compact in a number of other towns and cities. It can not be supposed that the Commercial company had knowledge of the local usages incident to the business of insurance in each of these numerous localities, and so contracted with reference to them that its obligations, expressed in clear and unambiguous terms, imported a liability for one sum on a given state of facts, in New York city, another sum on the same facts in Brooklyn, another in Litchfield, Connecticut, yet another in Chicago, and so on *ad infinitum.* The law to the contrary is well settled, that proof of such local usages will not raise up a presumption of a knowledge of their existence on the part of one engaged generally in the business to which they pertain in a certain city, at least where the domicile of the party sought to be charged is elsewhere; or, in other words, that in order to create even a *prima facie* presumption that a party has knowledge of an usage incident to a particular business about which he is engaged, the usage must be shown to be a general one in that business, in such sort as that it would be unreasonable to suppose he was ignorant of it. This plaintiff has failed to do; no general usage is proved, or attempted to be proved, and the defendant can not be held beyond the terms of its compact dissociated from any effect the alleged usage is claimed to have upon those terms. *Cobb v. Limerock Ins. Co.,* 58 Me. 326; Lawson, Usages & Customs, §§ 17, 25, 26, 27; *Hill v. Hibernia Ins. Co.,* 10 Hun, 26; *E. Tenn., V. & G. R. R. Co. v. Johnston,* 75 Ala. 596; *Smith v. Rice,* 56 Ala. 417; *Herring v. Skaggs,* 73 Ala. 446; *Bradley v. Wheeler,* 44 N. Y. 495; *Child v. Sun Mutual Ins. Co.,* 3 Sandf. 26; *Walls v. Bailey,* 49 N. Y. 464; *Higgins v. Moore,* 34 N. Y. 417.

The presumption of knowledge of an established usage, which arises upon proof of its generality in the business or trade to which it is incident, is, as we have indicated, generally speaking only *prima facie,* and hence rebuttable by direct evidence of a want of such knowledge.—*Walls v. Bailey, supra.* With reference to contracts of insurance, there is this objection to the doctrine just stated: that insurance companies are under such a duty to inform themselves of

the usages of the particular business insured as that they will not be heard to deny such knowledge. This only means, however, that where a *general* usage in business is proved, an usage of the character that raises up the *prima facie* presumption of knowledge in ordinary cases, the insurer, in view of the duty resting on him to acquaint himself with the general usages of the business, will not be let in to rebut the presumption, which, in consequence, becomes a conclusive one as to him. But an insurer is no more bound than any other party by proof of usages obtaining to a greater or less extent, territorially or otherwise, in respect of the business insured, which are not *general* in their nature, but obtain only in certain localities, or not substantially to all instances of the particular business. So that, if it were conceded here that had the proof established the New York City usage in question as incident to the insurance business throughout the territory contemplated in this re-insurance compact, the defendant would not be heard to assert its ignorance of it, or to deny that it contracted with reference to it; yet the predicate for this *quasi*-estoppel is wholly lacking, in that the proof adduced is not of such general usage, but only of one that is local and peculiar to the City of New York—a particular usage or custom the existence of which raises no presumption at all that defendant had knowledge of it.—Lawson's Usages & Customs, §§ 17, 19, 26.

It is further contended for plaintiff, that conceding the re-insurance compact did not authorize more than $5,000 of insurance on "Rossiter's Stores," yet the defendant acquiesced in, and thereby ratified plaintiff's entries involving a risk of $12,500, and thus validated these entries. Of course, this contention must be rested on the assumption that defendant was advised of the location and character of Rossiter's three stores, and knew or must be held to have known that they in fact constituted but one building; since acquiescence, from which ratification may be inferred, can only be predicated of a failure to disaffirm a transaction after the party is advised or put on notice in respect of the facts which entitled him to repudiate it. We do not find from this record that the Commercial Fire Insurance Company had knowledge or notice of the fact that these several stores constituted one and the same building, until after the loss had occurred, and demand had been made on it for its *pro-rata* of the insurance. The relations existing between the two companies were of a fiduciary character. The German-American company was in a sense the agent of the Commercial company, for the purpose of re-insuring itself in

the latter. The utmost candor and good faith on the part of the former were of the essence of the relations created by the compact. The Commercial company was justified in the assumption that the German-American company, in fixing liabilities on the former to enure to its own benefit, would not abuse the confidence incident to the relation existing between them, but would strictly adhere to and be guided by the terms of the compact, and not exceed the limits of liability thereby imposed. It had a right, therefore, to assume that it would not be entered in a sum greater than $5,000 on any one building or risk, and to act upon this assumption until it was advised to the contrary. It was not incumbent on the insurer to seize upon pretexts or slight indications to indulge suspicions leading to inquiries as to the good faith of its *quasi*-agent; and it does not lie in the mouth of the German-American company to say, Notwithstanding the trust and confidence inherent in our contractual relations, you should have been on the alert, as if anticipating malversation on our part, to institute minute inquiry into the transactions between us, with a view to discovering that we had violated the instructions you had laid down for our guidance. Conceding, therefore, that the Commercial company must be held to notice that "Rossiter's Stores Nos. 1, 2 and 3" were located at the foot of 60th street, from the casual mention of them as being there situated in the list of July 31, 1888 (which was forwarded to defendant for a purpose entirely distinct from that of giving advice of the location of any one of the numerous buildings mentioned therein), and this notwithstanding there is what seems to be a pregnant omission from the reports of re-insurance of all specification as to the location of two of these stores; yet we do not conceive that, under the circumstances, this notice that these stores were at the foot of a certain street carried either constructive or actual knowledge to defendant that the stores were in and constituted a single building. They might well have been the three stores next the end of the street, and yet have also been distinct buildings; and the defendant, in view of the stipulations of the compact which it had a right to suppose plaintiff would observe, was justified in assuming that they were in fact separate buildings and risks, although it may have known they were all at the foot of 60th street.

On the same considerations, our further conclusion is, that defendant is not prejudiced in this case by the fact that it at first placed its exemption in part from the asserted liability on another ground. This could not have been a

waiver of the defense now relied on, because the Commercial company, at the time of advancing the other defense, was not advised of the facts on which this one depended, and its ignorance of them was due, not to its own negligence, but to that of the plaintiff.

We find no error in the record, and the judgment of the City Court is affirmed.